## EX PARTE C. B. PARK.

*No. 1249.    Decided April 28th, 1897.*

**1.    Witness—Cannot be Required to Answer Questions Incriminating Himself.**

Constitution, Bill of Rights, Sec. 10, provides, that a defendant shall not be compelled to give evidence against himself.

**2.    Same—Dismissal of Prosecution.**

The prosecution may dismiss a case against a defendant, and, with a guaranty against any other or further prosecution for the same offense in the particular case then on trial may require his testimony.

**3.    Privilege of Witness as to Other Cases not on Trial.**

Where it appeared that the witness had been jointly indicted with others, and the prosecution had been dismissed in the particular case, but, other cases of a similar character were still pending against him, and he was placed upon the stand by the State and asked a certain question, which could have been answered "yes" or "no," but which the witness declined to answer, because, he claimed, his answer would incriminate him. Held: The witness is protected from answering, if it appears from the nature of the evidence which he is called to give, that there is reasonable ground to apprehend that, should he answer, he would be exposed to a criminal prosecution; or, where his answer is such as that, on a legitimate cross-examination, he would be compelled to testify to matters which could be used against him as a confession in the other cases.

**4.    Same—Cross-Examination.**

The witness is not to be compelled to answer any question, if the answer will tend to expose him to a criminal charge; but, if he state a particular fact, he will be bound, on his cross-examination, to state all the circumstances relating to that fact, although, in doing so, he may expose himself to a criminal charge.

**5.    Same—Practice—Duty of the Court Where There is a Doubt as to the Matter—Habeas Corpus.**

It may, at times, be difficult for the court to determine the question of privilege of the witness, but, in all such cases, the doubt should be solved in favor of the liberty of the citizen. It is the duty of the witness to object, if he desires to protect himself. It is then the duty of the court to rule upon the objections, and the rulings

of the court will be tested on habeas corpus, where the witness is held in contempt for refusing to answer, not only by the question propounded to the witness, but by the surrounding facts taken in connection with the question; and, relator will be discharged, if, in considering the question asked and all the surrounding facts, it appear that his answer would tend to incriminate him.

From Dallas County.

Original application to the Court of Criminal Appeals for habeas corpus to be relieved from confinement for a contempt, for refusal to answer certain questions propounded to applicant as a witness in a criminal prosecution.

The opinion states the case.

*Miller & Williams*, for relator.—In support of the constitutional right of a witness to refuse to answer a question that might tend to criminate him, and the extent to which he should be protected in that right, we respectfully refer the court to the following authorities: 1 Greenleaf on Ev., Sec. 451; Rice's Crim. Ev., Sec. 203, and authorities cited by both of these text-books; People v. Mather, 21 Amer. Decs., 38, and notes; Counselman v. Hitchcock, 142 U. S. Rep., p. 547; Ex parte Irvine, 74 Fed. Rep., 954.

There is no contention in this case, but what the plea of privilege was made in good faith. But should it be contended that the answer in itself would not be sufficient to convict the applicant, though we believe we have shown it would, but the plea being made in "good faith" says Mr. Rice, in his work on Evidence, and authorities there cited, Section 203: "It often happens that a question is asked a witness, the answer to which would not in itself be self-criminating, but would form a "link" in the chain of testimony, which would involve a conviction. In such case, by numerous authorities, it is held, that he is entitled to protection, without explaining how the answer would criminate him." So in any view of the effect of an answer to the question propounded, in the absence of any contention that the applicant was acting in bad faith, under the above authority, the applicant must be the judge of the effect of his answer. Good faith on applicant's part is supported also by the admission of the statement of facts, that he had already been convicted of the sale of tickets at the "Lucky Corner."

*Mann Trice*, Assistant Attorney-General, for the State.—Now, comes the State, by attorney, and moves the court to dismiss the application for writ of habeas corpus herein and remand relator to the custody of the sheriff of Dallas County, for the reasons following:

Because the question propounded to relator as a witness, and for the refusal to answer which he was committed, does not call for an answer that would tend to incriminate him. This is the question propounded: "Do you know of your own knowledge, whether or not any lottery tickets were kept for sale or sold at the Lucky Corner, on or about the 10th day of February, of this year?"

No answer responsive to this question could possibly tend to incrimi-

nate relator, for the obvious reason that the question does not call for an answer, showing or tending to show the identity of the relator with the transactions inquired about; nor does it call for an answer tending to show who was engaged in such sale, or keeping for sale, or offering for sale. The question could have been answered by a simple negative or affirmative. Then if the examination had sought to have disclosed identity, privilege could have been invoked.

Where knowledge of the commission of an offense does not constitute one an offender in any sense or degree, this is so even though such knowledge may show the identity of the real offender. The answer to the above question would not even show or tend to show the real offender.

"To entitle a witness to privilege, the court must see from the circumstances of the case and the nature of the evidence called to be given, that there is reasonable ground to apprehend danger to the witness from being compelled to answer. The danger must be real and appreciable. Rapalje on Contempt, Sec. 79, p. 102.

The question as to whether any answer responsive to the interrogatory would criminate or tend to criminate the witness, is for the court to determine. The rule is: "Can any answer, responsive to the question, subject the witness to a criminal prosecution," must be decided by the court, and not by the witness. Rapalje on Contempt, p. 103; Law of Witnesses by Stewart & Rapalje, Sec. 266; Floyd v. State, 7 Tex. Crim. App., 215; Richman v. State, 2 Green (Iowa), 532; State v. Duffy, 18 Iowa, 425; Com. v. Braynard, Thach. (Mass. Cr.), 156; and for additional collated authorities, 21 Amer. Decs., p. 57.

Now, it must be observed, that the answer must be responsive to the question, and must tend to incriminate the witness. It is not any answer he may give, that would entitle him to the privilege; but as said by Parke, B.: "The great weight of authority is in favor of not allowing the simple declaration, that the answer may incriminate, to excuse the witness from answering, but the question must appear to the court to have that tendency." Osborn v. London Dock Co., 21 Amer. Decs., p. 57.

If the court holds that the answer would have a tendency to criminate, then the witness can decide whether his answer would have such effect. As said in Richman v. State, 2 Green, supra: "If this were not the case, it would be in the power of the witness, when called upon to give testimony in a criminal case, to refuse to do so. If he is to be the sole judge whether the answer would implicate him, it would be impossible to elicit any testimony. Perjury could not only be committed with impunity, by stating that answer would criminate him, but the guilty party would be screened from merited punishment. We cannot sanction a rule fraught with such consequences. The direct tendency of such a rule would be to suppress truth and prevent the administration of justice. Therefore, we think the better and safer rule to be, that of compelling the witness to answer, when it is apparent to the court

that such answer would not interfere with his legal privilege. In this case it is evident from the scope of the question that the answer could not infringe upon his right, and yet the witness makes himself the sole judge and refuses to answer."

As before stated, the answer could have been by a simple affirmative or negative. To have identified any person with the commission of any of the offenses named, would have been foreign to the question, and not responsive to the interrogatories propounded. The witness should have been required to answer the question, and if at any subsequent stage it should have been attempted to show his identity or connection with the transaction, then he could have interposed his privilege.

Relator avers that to answer said question would not only tend to incriminate him, but that a truthful answer would form a link in a chain of testimony for the State, which could be used disastrously to him in this and other cases. I fail to see how the answer, if responsive to the question, could go to this extent, as the question propounded does not seek to disclose the name of any person connected with the commission of the offense. Nor would his voluntary answer to the question propounded require him to relate, if he knew, who the parties were. Of course if he voluntarily suggested the name of any person connected with the commission of the offense, then he would be required to relate the entire transaction, but until identity and connection is shown the transaction, that is, the criminal offense inquired about, is not an element to be considered in connection with the interrogatory propounded.

HENDERSON, JUDGE.—This is an original proceeding on a writ of habeas corpus, granted by this court. The record shows that C. F. Champion, W. P. Johnson, and C. B. Park (this relator) were jointly indicted on a charge of ke·ping for sale, offering for sale, and selling, tickets and part tickets in a lottery to one Dr. J. B. Smoot, and were on trial in the County Court of Dallas County. After the parties had gone to trial, the case was dismissed as to C. B. Park, relator; and he was placed on the stand by the State as a witness. The County Attorney propounded to said witness the following question: "Do you know of your own knowledge whether or not any lottery tickets were kept for sale, offered for sale, or sold, at the 'Lucky Corner' on or about the 10th day of February of this year?" The witness declined to answer said question, on the ground that a truthful answer to the same would tend to incriminate him of an offense against the laws of this State. Thereupon the court held that he was bound to answer said question, and on his refusal to do so, the judge remanded him to the custody of the sheriff of Dallas County until such time as he should answer said question. The applicant sued out a writ of habeas corpus, which was granted by this court. It was further shown before said court, and as a part of the record in this case, that said relator, C. B. Park, had been convicted within the past ten days in said court in about a half-dozen cases for keeping for sale, offering for sale, and selling, lottery tickets at the Lucky Corner,

and that there are now pending about twenty-five other cases against him for having and keeping for sale, offering for sale, and selling, lottery tickets at said Lucky Corner, in Dallas County, and that said last-mentioned cases now stand for trial in said court. It was further made a part of the record that said Park had acted as the agent of his codefendants at said Lucky Corner. The question is thus presented as to whether or not, on this state of case, the County Judge was authorized —that is, had the power—to treat the refusal of the witness to answer said question as a contempt of court, and to punish him therefor by confinement in the county jail until such time as he should agree to testify and answer said question. Our Constitution (see, Bill of Rights, § 10), among other things, provides "that a defendant shall not be compelled to give evidence against himself." The statutes provide that prosecutions may be dismissed against defendants, the County or District Attorney filing written reasons therefor, which shall be embodied in the judgment. See, Code Crim. Proc., 1895, Arts. 37, 630. Article 709 further provides: "The attorney representing the State may at any time, under the rules provided in Article 37, dismiss a prosecution as to one or more defendants jointly indicted with others, and the person so discharged may be introduced as a witness by either party." This would seem to imply the power on the part of the State to dismiss a case against a defendant, and require his testimony. Of course, such dismissal must be with the guaranty to the witness on the part of the court against any other or further prosecution for the same offense; and this statute has been so construed. See, Camron v. State, 32 Tex. Crim. Rep., 180; Neeley v. State, 27 Tex. Crim. App., 327; Fleming v. State, 28 Tex. Crim. App., 234. It has, however, been held that this authority or power extends only to the particular case then on trial, but not to any other distinct offense. See, Heinzman v. State, 34 Tex. Crim. Rep., 76; Moseley v. State, 35 Tex. Crim. Rep., 211. Conceding that the dismissal against the relator of the case then on trial, and requiring him to testify, was a guaranty on the part of the court that he should be no further prosecuted for said offense, the issue is then presented: Was the question of such a character, under the conditions then surrounding the defendant, as to other offenses of like character then pending against him, as would tend to criminate him as to said offenses? We hold that this matter is, in the first instance, to be determined by the court or judge; that is, "it must appear to the court from the character of the question and the other facts adduced in the case that there is some tangible and substantial probability that the answer of the witness may help to convict him of a crime. The liability must appear reasonable to the court, or the witness will be compelled to answer." See, Ex parte Irvine, 74 Fed. Rep., 954, which is an exhaustive discussion of this question, and the authorities there cited; Fries v. Brugler, 12 N. J. Law, 79, reported in 21 Amer. Decs., 52, and note thereto on page 57; People v. Mather, 4 Wend., 229, reported in 21 Amer. Decs., 122, and authorities cited in note thereto. We quote

from Whar. Crim. Ev., § 466, as follows: "To protect the witness
from answering, it must appear from the nature of the evidence which
the witness is called to give that there is reasonable ground to appre-
hend that, should he answer, he would be exposed to a criminal prosecu-
tion. The witness, as will be seen, is not the exclusive judge as to
whether he is entitled on this ground to refuse to answer. The question is
for the discretion of the judge, and, in exercising this discretion, he
must be governed as much by his personal perception of the peculiarities
of the case as by the facts actually in evidence. But, in any view, the
danger to be apprehended must be real, with reference to the probable
operation of law in the ordinary course of things, and not merely spec-
ulative, having reference to some remote and unlikely contingency."
Mr. Wharton further says (section 469): "The witness is not the sole
judge of his liability. The liability must appear reasonable to the court,
or the witness will be compelled to answer. Thus, a witness may be
compelled to answer as to conditions which he shares with many others,
though not as to conditions which would bring the crime in inculpatory
nearness to himself. But, in order to claim the protection of the court,
the witness is not required to disclose all the facts, as this would de-
feat the object for which he claims protection. It is not, indeed, enough
for the witness to say that the answer will criminate him. It must ap-
pear to the court, from all the circumstances, that there is a real danger,
though this the judge, as we have seen, is allowed to gather from the
whole case, as well as from his general conception of the relations
of the witness. Upon the facts thus developed, it is the prov-
ince of the court to determine whether a direct answer to a ques-
tion may criminate." And see authorities cited in notes to said sec-
tions. This rule has been followed in this State. See, Floyd v. State,
7 Texas, 215. After the court has determined from the environments
and the nature of the case, so far as stated, that the answer of the wit-
ness might tend to criminate him, it is then the province of the witness
to state whether or not a truthful answer to the question asked would
tend to criminate him. See authorities, supra. It is contended by the
Assistant Attorney-General that the answer to the question asked, to-
wit: "Do you know of your own knowledge whether or not any lottery
tickets were kept for sale, offered for sale, or sold, at the 'Lucky Corner,'
on or about the 10th of February of this year?" would require only a
simpel answer of "Yes" or "No," and that this could not possibly tend
to criminate the witness in any offense for selling lottery tickets at said
Lucky Corner. In answer to this, it may be stated that the record dis-
closes that the relator was a clerk of his codefendants at said Lucky
Corner, evidently for the sale of lottery tickets; and, in the other cases
pending, the fact of knowledge on his part that lottery tickets were sold
at said Lucky Corner might constitute an important element or essential
link in the chain of circumstances to convict him of said other offenses.
Concede, however, that it would not have this tendency, yet the witness
having been placed on the stand by the State, and this testimony having

been elicited from him by the prosecution, it would not be possible for the State to interfere and prevent a cross-examination of the witnesses upon this testimony, even though the prosecution had not pressed the investigation further with said witness. Assuming that the witness would state, in answer to said question, that he knew of the sale of lottery tickets at said place (and it must be assumed, else the State would not have offered it, that the fact that this witness knew of such sales was material for the State), then an obvious inquiry on the part of the defense on cross-examination would be as to the means of knowledge on the part of the witness that lottery tickets were sold at said corner; that is, how he knew the fact. If he knew it from his presence there at the time, this would place him in close contact with the offense of selling lottery tickets, and if the cross-examination was pressed still further, and he answered that he knew of such sales because he made them, then it would bring him in direct contact with the offense, and could be proved, in a trial for such other offense, by the confession of the witness. Under the authorities, as we understand them, the objection of privilege—that is, that the answer to the question would tend to criminate him—must be made at the threshold. He cannot wait and answer a part, and then refuse to answer other questions legitimate to a cross-examination. If he voluntarily states a part of the testimony, he waives his right, and cannot afterwards stand on his privilege. If it were otherwise, he might give in testimony hurtful to a defendant, but refuse to be cross-examined as to matters which might be to defendant's benefit. See, Rap. Wit., § 269; Whar. Crim. Ev., § 470; State v. Blake, 25 Me., 350; Com. v. Price, 10 Gray, 472; People v. Freshour, 55 Cal., 375; Connors v. People, 50 N. Y., 240; State v. K., 4 N. H., 562. The latter case, of State v. K., is so much to the point that we quote the opinion in full. K. was indicted for unlawfully breaking and entering a public burial place, and taking up and carrying away the body of a person who had been there interred. On the trial, the defendant called a witness, who stated that he knew defendant to be innocent, but that he could not state how he knew that without implicating himself, and he inquired of the court whether or not he was bound to testify at all, and if bound to testify, how far he was compelled to go. The court used the following language: "The witness is not to be compelled to answer any question if the answer will tend to expose him to a criminal charge; but, if he state a particular fact in favor of the respondent, he will be bound on his cross-examination to state all of the circumstances relating to that fact, although in doing so he may expose himself to a criminal charge. We shall not compel the witness to state that he knows the respondent to be innocent if a full account of his knowledge on that subject will tend to furnish evidence against himself. But, if he testifies to that fact, we shall permit the Attorney-General to inquire how the witness knows that fact, and compel him to answer the question. It is clearly inadmissible to permit a witness to give a partial account of his knowledge of the transaction, sup-

pressing other of the circumstances, whether the evidence is to be used in favor of or against the State." We believe the facts as stated in the record disclose a case where the answer of the witness—that is, taking it for granted that he should answer "Yes," that he knew of such sales might tend to criminate him in other cases then pending against him. Certainly, a cross-examination would involve the means of knowledge on the part of the witness as to the sale of lottery tickets at said Lucky Corner; and this means of knowledge, if it was personal on the part of the relator, it occurs to us, would or might constitute important testimony against him in the trial of said other causes. We are impressed with the delicate position in which a trial judge is placed in a matter of this sort, having a desire, on the one hand, to protect the rights and privileges of the individual witness, and, on the other, having a due regard for the right of the community to have the wheels of justice unclogged as far as may be consistent with the liberty of the individual. Sometimes it may be difficult to discern the dividing line, but in all such cases we believe the doubt should be solved in favor of the liberty of the citizen. However, in this case it does not occur to us that there is any question of doubt as to the privilege exercised by the witness. We have stated above that the court decided, in the first instance, whether the answer would criminate the witness. We have also stated that the witness could not decide this question. If the witness were permitted to decide the question, the ends of justice would frequently be defeated. If the decision of the court be conclusive, then the witness might be deprived of a constitutional right. We are therefore of opinion that the rule is that it is the duty of the witness to object if he desires to protect himself. It is the duty of the court then to rule upon his objections, and, if the court should rule that the answer would not criminate him, the correctness of the ruling of the court is to be tested, not only by the question, but by all of the surrounding facts; and if it should appear that the surrounding facts, taken in connection with the question asked, show that the court's decision was wrong, upon habeas corpus the action of the court can be revised. And, in support of these propositions, we refer to the case of Holman v. Mayor, 34 Texas, 668, and authorities there cited. It is accordingly ordered that the relator be discharged, and that he pay the costs of this court, and that a copy of this judgment be certified to the County Court of Dallas County for observance.

*Relator Discharged.*