Louis Edward BLACKMON, Appellant,

v.

The STATE of Texas, Appellee.

No. 218–82.

Court of Criminal Appeals of Texas, En Banc.

Dec. 8, 1982.

Rod Poirot, Lawrence B. Mitchell, Dallas, for appellant.

Henry Wade, Dist. Atty., Karen Chilton Beverly, Robert E. Whaley and Mary Ludwick, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

TOM G. DAVIS, Judge.

After finding appellant guilty of aggravated rape, the jury assessed punishment at life. The conviction was affirmed by the Court of Appeals for the Fifth Supreme Judicial District (Dallas). We granted appellant's petition for discretionary review in order to examine the Court of Appeals' holding that a witness who testifies against a defendant does not waive his privilege against self-incrimination with respect to extraneous activity.

Appellant, along with three other men, allegedly raped S____ W____ (the prosecutrix herein), on January 2, 1979. Donald Ray Gipson, one of the three, was charged, convicted and sentenced to life for the aggravated rape of S____ W____ prior to appellant's trial.

At appellant's trial, Gipson testified on direct examination that both he and appellant raped S____ W____.

On cross-examination Gipson admitted that he "just got life for S____ W____." When asked if he had two other cases pending against him Gipson replied, "Not that I know of." Gipson was then asked if he had raped P____ R____. (P____ R____ and

M____ R____ had testified at Gipson's trial that Gipson raped them). He refused to answer, invoking his Fifth Amendment privilege against self-incrimination.

The jury was excused and further testimony was taken. The trial court ruled that Gipson did not have to testify (1) as to whether he raped P____ R____ or M____ R____ or (2) whether he was present when they were raped.

Gipson did testify, after the jury was returned, *and under order of the trial court* that: (1) no charges had been brought against him for the rape of P____ R____ or M____ R____; (2) charges could still be brought against him for those rapes; and (3) both P____ R____ and M____ R____ testified, at his trial for the rape of S____ W____, that he raped them.

Appellant contends that once Gipson took the stand he waived his privilege against self-incrimination and that the trial court's action in allowing Gipson to invoke the privilege was an infringement of appellant's Sixth Amendment rights of confrontation and cross-examination.

In answering this contention the Court of Appeals stated:

"The witness Gibson [sic] in taking the stand and testifying does not waive his right against self-incrimination in respect to other extraneous criminal activity. *In re Corrugated Container Anti-Trust Litigation,* 620 F.2d 1086 (5th Cir.1980); *United States v. D. Giovani* [Di Giovanni], 544 F.2d 642, 645 (2nd Cir.1976); *United States v. Aikon* [sic], 373 F.2d 294 (2nd Cir.1967), cert. denied, 389 U.S. 833 [88 S.Ct. 32, 19 L.Ed.2d 93] (1967); *cf. Draper v. State,* 596 S.W.2d 855, 857 (Tex.Crim. App.1980) (waiver when witness opens the door)."

We note first that the decisions of the lower federal courts are not binding on the Court of Criminal Appeals. *Flores v. State,* 487 S.W.2d 122 (Tex.Cr.App.1972). Accordingly, when decisions of the lower federal courts conflict with decisions of this Court, the Courts of Appeals are bound to follow the decisions of this Court.

Under our case law, it is too broad a statement to suggest that a witness taking the stand and testifying never waives his privilege against self-incrimination with respect to extraneous activity.

It is also incorrect to suggest that an ordinary witness waives the privilege upon taking the stand. McCormick states that:

> "The accused in a criminal proceeding by the mere fact of testifying forfeits his privilege to a significant extent. This rule obviously cannot hold true in regard to one not an accused, as such a person has no privilege to decline to testify and therefore would be in effect precluded from ever invoking the privilege.

> On the other hand, after a witness has revealed a certain amount of information, requiring him to make further disclosure may not significantly endanger the interests which the privilege protects." C. McCormick, McCormick on Evidence, Sec. 140 (2nd Ed. 1972).

Wigmore notes that:

> "The witness who is not the accused in a criminal trial—the *ordinary* witness—may waive his privilege; this is conceded. He waives it by exercising his option of answering; this is conceded. Thus the only inquiry can be whether, by *answering as to fact X, he waived it for fact Y.* The answer is yes, provided the facts are sufficiently related.

> " . . .

> "A witness of course does not, simply by testifying (and 'putting his veracity in issue'), waive his privilege with respect to his criminal acts relevant only to impeach his credibility . . ."

> "The rationale of the witness' waiver rule is aptly expounded in the following passages:

> > " 'Campbell, J., in *Foster v. People,* 18 Mich. 266, 274–75 (1869): [W]here he has not actually admitted criminating facts, the witness may unquestionably stop short at any point and determine that he will go no further . . .' " 8 Wigmore, Evidence (McNaughton rev.) § 2276(b)(1).

Ray on Evidence discusses at Section 473 the difference between a witness and the accused with respect to claiming the privilege against self-incrimination: "In the case of an ordinary witness the question may be asked. He may then decide whether he will exercise the privilege . . . On the other hand . . . an accused has the privilege of refusing to give any testimony." At Section 483, covering waiver of the privilege by a witness, Ray states: "The disclosure of any act or transaction waives the privilege as to all details and particulars *of the act or transaction.*" (Emphasis added).

*Draper v. State,* 596 S.W.2d 855 (Tex.Cr. App.1980), does not stand for the proposition that a witness waives the privilege against self-incrimination by testifying. Rather, the Court stated that: "Once having related part of the *facts of the transaction,* a witness should not be permitted to assert a Fifth Amendment privilege to prevent disclosure of *additional relevant facts.*" (Emphasis added). 596 S.W.2d at 857. In *Draper,* once the witness testified to arranging a meeting between himself and appellant he was not allowed to refuse to reveal the purpose of the meeting.

Broad statements in *Ex parte Park,* 40 S.W. 300 (Tex.Cr.App.1897), that if a witness "voluntarily states a part of the testimony he waives his right, and cannot afterwards stand on his privilege," and that, "the objection of privilege . . . must be made at the threshold," should not be taken out of the context of that case.

In *Park,* it was never suggested that by taking the stand Park waived the privilege. In fact, Park was held *not* to have waived the privilege. Further, the Court in *Park* quoted approvingly from *State v. K.,* 4 N.H. 562 (1829), wherein it was stated:

> "The witness is not to be compelled to answer any question if the answer will tend to expose him to a criminal charge; but, if he state *a particular fact* in favor of the respondent, he will be bound on his cross-examination to state *all of the circumstances relating to that fact,* although in doing so he may expose himself to a criminal charge." (Emphasis added).

The entire discussion in *Park* of the standards to be used in determining whether a witness' answer is incriminatory *assumes* that the witness has *not* waived the privilege by taking the stand and testifying in general. (In *Stanfield v. State,* 165 S.W. 216 (Tex.Cr.App.1914), and *Mathis v. State,* 209 S.W. 150 (Tex.Cr.App.1919), the witness successfully invoked the privilege against self-incrimination. In each case, the witness had been called to the stand and had given testimony when the privilege was asserted.)

Thus, the invocation of the privilege at the "threshold" refers to the "threshold" of any particular transaction or area of testimony.[1]

Turning to the instant case, it is clear that the witness Gipson did not waive his privilege against self-incrimination.

 He asserted the privilege at virtually the threshold of his *entire* testimony. Neither the testimony that M⎯⎯ R⎯⎯ and P⎯⎯ R⎯⎯ *accused* him of raping them nor the testimony that he *could* still *be indicted* for those rapes (all of which was given under the court's direction) constituted testimony about the *facts of the rapes* in question. The *transactions* Gipson testified to were an in-court identification and the possibility of future punishment, not the actual rapes. The incriminatory nature of an affirmative response by Gipson to the proffered questions is obvious.

We agree with the Court of Appeals that the trial court allowed a thorough development of the possible influence the State

may have had over Gipson by virtue of the other rapes. Appellant was trying to establish bias on the part of Gipson, by showing, inter alia, that the State had the power to try Gipson for the rape of M⎯⎯ R⎯⎯ and P⎯⎯ R⎯⎯. Appellant was given wide latitude in this regard, except for the two questions he was not allowed to ask. Under these circumstances, appellant's Sixth Amendment rights of confrontation and cross-examination were not violated.

The judgment of the Court of Appeals is affirmed.

ROBERTS, J., concurs in the result.

TEAGUE, J., dissents.

---

1. The "facts of the transaction" standard as enunciated above may not be protective enough of the witness in certain situations. Language in *Rogers v. U.S.,* 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951), and *McCarthy v. Arndstein,* 262 U.S. 355, 43 S.Ct. 562, 67 L.Ed. 1023 (1923), suggests that an involuntary witness, such as a witness before the grand jury who has not been offered immunity, has not waived his Fifth Amendment rights until he makes a specific incriminatory statement. This particular question is not presented here since Gipson was not an involuntary witness and his Fifth Amendment rights were honored.

We are aware also of broad language in *Brown v. U.S.,* 356 U.S. 148, 158, 78 S.Ct. 622,

628, 2 L.Ed.2d 589 (1958) to the effect that a voluntary witness who takes the stand cannot claim the privilege. Subsequent cases have narrowed the rule in *Brown* to *defendants* who take the stand in their own behalf. *Jenkins v. Anderson,* 447 U.S. 231, 236, 100 S.Ct. 2124, 2128, 65 L.Ed.2d 86 (1980). Further, the waiver goes to matters "reasonably related to the subject matter of the direct examination." In the instant case, Gipson's testimony on direct concerned only the aggravated rape of S⎯⎯ W⎯⎯. The other rapes were brought out on cross-examination in order to impeach Gipson by showing his motive for testifying against appellant.