Donavan SCOTT, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–95–01712–CR.

Court of Appeals of Texas, Dallas.

Feb. 19, 1997.

---

R. K. Weaver, Dallas, for Appellant.

Lorraine A. Raggio, Assistant District Attorney, Dallas, for Appellee.

Before LAGARDE, WHITTINGTON and JAMES, JJ.

LAGARDE, Justice.

The jury convicted appellant Donavan Scott of attempted capital murder and assessed punishment at seventy years' confinement. In two points of error, appellant contends the trial court erred in (1) permitting a fact witness to invoke his Fifth Amendment privilege against self-incrimination after voluntarily taking the stand and testifying on behalf of the State, and (2) refusing to allow appellant to make a bill of exception regarding the fact witness's testimony. For the reasons set forth below, we affirm the judgment of the trial court.

## Factual Background

Both of appellant's points of error relate to testimony by Clifton Earl Garrett, who was sometimes referred to at trial as "Hammer." The facts adduced that are necessary to place Garrett's testimony in perspective are as follows:

Appellant was convicted of the attempted capital murder of Peter Maxwell Langel. Langel testified that on July 27, 1995, he had dinner at a friend's apartment located at 7910 Treehouse Lane in Dallas. He left sometime between 10:15 and 10:30 p.m. to return to his home in Coppell. He arrived home about thirty minutes later and backed his 1994 Toyota Land Cruiser into the driveway. When he got out of the vehicle, he noticed a white Cordoba pass slowly in front of him. Shortly thereafter, he saw appellant running towards him with a gun in his right hand. Appellant stopped when he was about three feet from Langel. Langel asked what appellant wanted. Appellant replied "I want your wheels." Langel handed appellant his keys, and appellant shot him in the face from a distance of approximately five inches.

Jacqueline Yvette Berry lived with appellant at an apartment located at 7910 Treehouse Lane, the same apartment complex where Langel had been earlier that evening. She testified that on the evening of July 27, at about 10 p.m., appellant asked her to drive somewhere with him. He did not tell her where they were going; he only told her that he would need her to drive his car and follow him back to their apartment. Appellant, driving a white Cordoba, drove to a neighborhood in Coppell that Berry, at that time, did not recognize. In court, Berry was shown a photograph of Langel's neighborhood, and she was able to testify that the neighborhood depicted in the photograph was the same as the one appellant drove her to that night. Once in the neighborhood, Berry noticed they were following a white truck. After being shown a picture of the Land Cruiser, she identified it as the truck they were following. Appellant parked the Cordoba and got out of the car. About five minutes later, Berry heard a "pop" that sounded like a gunshot. Appellant, driving the Land Cruiser, pulled up beside Berry and said he

was going to hurry up and go home. Berry tried to follow appellant but got separated from him. She pulled into the parking lot of a restaurant and parked the car. City of Coppell police officers arrived at the parking lot and began to question Berry.[1] She told the police that appellant was with his brother, whom she identified as "Hammer."[2] Berry was taken to the police station where she gave two written statements that implicated Hammer. In one statement, Berry stated that Hammer had a white Cordoba identical to appellant's. At trial, Berry acknowledged that she lied to the police; appellant had not been with Hammer that night, and Hammer had no involvement with the shooting.

The following day, two Dallas police officers went to appellant's apartment. They had been given a description of appellant and the Land Cruiser. They found appellant in the parking lot applying liquid paper to an area of the Land Cruiser's license plate where registration stickers had been removed. One of the police officers testified that appellant was trying to cover a space that had been scraped up so that the plate would look new. They took appellant into custody. The officers searched appellant's person and found the keys to the Land Cruiser in his pocket.

The police took the Land Cruiser to the police automobile pound where a physical evidence officer examined it. The officer testified that he recovered a .32–caliber H & R revolver from the console. The weapon had one spent casing under the hammer, and the remaining rounds were live and in the cylinder. He also testified that appellant's fingerprints were found on the exterior of the vehicle and on compact discs and magazines found in the interior of the vehicle.

A firearm and tool mark examiner at the Southwest Institute of Forensic Science compared the bullet surgically recovered from Langel's head to the revolver found in the console of the Land Cruiser. He testified that the bullet had sufficient markings present to identify it as having been fired by the revolver.

Clifton Earl Garrett, whose nickname is "Hammer," testified on direct examination by the State that he was a friend of appellant's and had known him for more than two years. One morning, "possibly July 28," appellant came to his apartment and asked him to "come out and check his new car." Garrett came out and saw the Land Cruiser. Garrett testified that he does not own a white Cordoba, he was not with appellant at the time of the shooting, and he did not have any involvement in the instant offense. He further testified that he was currently in jail on an aggravated assault charge. He had not been indicted because the charge had not yet been presented to a grand jury. Garrett further testified that the State did not make him any promises regarding the pending aggravated assault charge in exchange for his testifying in the instant case.

On cross examination by the defense the following exchange occurred:

Q. Okay. And you're in jail for aggravated assault with a deadly weapon; is that right?

A. Yes, sir.

Q. Is that from shooting at somebody?

Prosecutor: Objection. It's irrelevant.

Defendant's Attorney: Your Honor, they're the ones that opened it up.

Prosecutor: If it has any relevance, it's for potential bias. He shouldn't be allowed to go into any facts or circumstances of the offense.

THE COURT: We'll sustain the objection.

Defendant's Attorney: May I make a Bill in this regard?

THE COURT: Sure, during the recess you can do that.

During the lunch recess, outside the presence of the jury, defense counsel questioned Garrett as follows:

---

1. The police, having been notified of the shooting, were on the lookout for a car fitting the description of the white Cordoba.

2. In other testimony, Berry identified Hammer as a friend, rather than the brother, of appellant.

Q. Mr. Garrett, you're currently incarcerated for the offense of aggravated assault with a deadly weapon; is that correct?

A. Yes.

Q. Okay. That involves you being accused of assaulting someone with a deadly weapon: is that correct?

Prosecutor: Your Honor, at this time we're going to re-urge our objection. The only potential relevance and admissibility of his current incarceration is any potential bias there may be for forgiveness or promises made by the prosecution, and that the defense counsel should not be and is not entitled to go into any of the facts underlying the aggravated assault.

THE COURT: I agree and I sustain the objection. You just want to make a Bill? I think you cannot impeach a witness by extraneous acts is the law, but a witness who is currently charged with a criminal offense, you are permitted to bring that out before the jury and to make inquiry whether there are any agreements or promises. My understanding of the law is that it does not permit you to go beyond that which would in effect be impeaching a witness with extraneous acts or bad conduct or permitting the defense to put it on in the way of a Bill.

Defendant's Attorney: My whole point is though that the aggravated assault doesn't convey in and of itself, doesn't convey to the jury why he was brought to jail. And I'm not going into the facts of the offense, I'm asking him what gave rise to that charge.

THE COURT: Certainly sounds like the question you asked before and the jury was here, and going into the facts of it. I think that he has been arrested and charged with the felony offense of aggravated assaulted (sic) is probably all the jurors need to know.

But go ahead and make your Bill.

\*     \*     \*     \*     \*     \*

Q. Mr. Garrett, the charge involves you being charged with assaulting someone with a deadly weapon; is that correct?

Garrett's Attorney: Judge, we'll object—you've already ruled on this. He's going to claim the Fifth if they're going to start peppering him with free discovery on these offense details, so at this point we're going to claim the Fifth.

\*     \*     \*     \*     \*     \*

THE COURT: Does the witness wish to take the Fifth?

A. Yes.

THE COURT: Then that ends it, since the witness invoked his right to the Fifth Amendment, and the Bill will reflect that.

### Discussion

■ In point of error number one, appellant contends the trial court erred in allowing Garrett to invoke his Fifth Amendment privilege against self-incrimination.[3] The Fifth Amendment to the Constitution of the United States provides that no person shall be compelled in any criminal case to be a witness against himself. U.S. CONST. amend. V. Appellant contends Garrett waived his privilege by voluntarily taking the stand and testifying for the State.

Garrett was a fact witness, not the accused on trial. He voluntarily testified regarding his knowledge of the incident that resulted in appellant being charged. The question he refused to answer concerned facts of an unadjudicated offense unrelated to the matter before the court. Thus, the issue is, under these circumstances, did the trial court err in allowing Garrett to assert his Fifth Amendment privilege against self-incrimination?

---

3. In his brief, appellant argues that Garrett waived not only his Fifth Amendment privilege but also his privilege under the Texas Constitution, which provides: "In all criminal prosecutions the accused ... shall not be compelled to give evidence against himself." *See* TEX. CONST. art. I, § 10. At trial, Garrett asserted his privilege only under the Fifth Amendment, therefore, we need not address issues regarding the Texas Constitution. We do note, however, that article I, section 10 is comparable in scope to the Fifth Amendment. *See Olson v. State,* 484 S.W.2d 756, 762 (Tex.Crim.App.1969).

The court of criminal appeals addressed this issue in *Blackmon v. State*, 642 S.W.2d 499 (Tex.Crim.App.1982). Blackmon and three other men were accused of raping S.W. One of the three other men had been tried and convicted of the rape, and he was called by the State as a witness at Blackmon's trial. The witness testified that both he and Blackmon raped S.W. On cross-examination, the witness was asked if he had raped two other women. The witness refused to answer and instead invoked his Fifth Amendment privilege against self-incrimination. *Id.* at 500. Thereafter, the trial court excused the jury and further testimony was taken. The trial court ruled that the witness did not have to testify whether he raped the other two women or whether he was present when those rapes occurred. *Id.* The witness did testify, after the jury returned and under order of the trial court, that no charges had been brought against him for the rape of either of the two women, but that charges could still be brought against him. *Id.*

On appeal, Blackmon contended that once the witness took the stand he waived his privilege against self-incrimination. *Id.* The court of criminal appeals disagreed. The court cited one of its early precedents that held:

> The witness is not to be compelled to answer any question if the answer will tend to expose him to a criminal charge; but, if he state a particular fact in favor of the respondent, he will be bound on his cross-examination to state all of the circumstances relating to that fact, although in doing so he may expose himself to a criminal charge.

*Id.* at 501 (citing*Ex parte Park*, 37 Tex.Crim. 590, 40 S.W. 300, 302 (Tex.Crim.App.1897), citing *State v. K.*, 4 N.H. 562 (1829)). Thus, the court in *Blackmon* concluded that "it is too broad a statement to suggest that a witness taking the stand and testifying never waives his privilege against self-incrimination with respect to extraneous activity." *Black-*

*mon*, 642 S.W.2d at 501. Instead, the witness may invoke the privilege at the "threshold" of "any particular transaction or area of testimony" that is unrelated to the testimony provided on direct examination. *Id.* at 501–02.[4] In *Blackmon*, the court determined the witness properly invoked his privilege because questions about the rape of the other two women were extraneous to the matter before the court, could have elicited an incriminatory response, and the witness timely invoked his privilege. *Id.*

Thus, in the instant case, the trial court could have compelled Garrett to testify about potentially incriminatory matters only if: (1) the testimony related to the "transaction" or "area of testimony" about which he voluntarily testified on direct examination; or (2) Garrett failed to invoke his privilege at the "threshold" of the questioning regarding the extraneous matters.

First, we consider whether the facts underlying the aggravated assault charge were related to the testimony Garrett gave on direct examination. On direct examination, Garrett testified that: (1) appellant came to his apartment and asked him to come and check out his new car—*i.e.*, Langel's Land Cruiser; (2) he does not own a white Cordoba, he was not with appellant at the time of the shooting, and he did not have any involvement in the carjacking; and (3) he had recently been arrested for aggravated assault, that charge had not yet been presented to the grand jury, and the State did not promise him anything in exchange for his testifying in this matter. The question he refused to answer on bill of exception concerned the facts of an aggravated assault charge pending against him.

Appellant argues that if Garrett was in jail on another carjacking, it would: (1) impeach Berry's recanting of her original story that Garrett was involved in this case, (2) impeach Langel's statement that only appellant assaulted him, and (3) give "Garrett strong

---

**4.** The corollary to the holding in *Blackmon* is that once a witness relates part of a transaction, he should not be permitted to assert the Fifth Amendment to prevent disclosure of additional relevant facts. *See, e.g., Draper v. State*, 596 S.W.2d 855, 857 (Tex.Crim.App.1980). Other-

wise, the witness might give testimony harmful to the defendant, but refuse to be cross-examined as to matters that might be to the defendant's benefit. *Id.; see also Ikeda v. State*, 846 S.W.2d 519, 521 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd).

motivation for tailoring his trial testimony to limit his exposure to this attempted murder."

We conclude that evidence regarding the underlying facts of Garrett's unrelated, unadjudicated offense were not admissible for any of the purposes proffered by appellant; therefore, the excluded evidence was not related to Garrett's testimony on direct examination.

■ Berry unequivocally admitted making prior inconsistent statements regarding Garrett's involvement in this matter. "If a witness unequivocally admits having made [a prior inconsistent] statement, extrinsic evidence of same shall not be admitted." TEX. R.CRIM.EVID. 612(a). Thus, even if a specific act of conduct by Garrett could be used to impeach Berry, rule 612(a) prohibits its use because of Berry's unequivocal admission.

Nor could the details of the charge pending against Garrett be used to impeach Langel's testimony that appellant was the lone assailant. Appellant is basically arguing that if Garrett was in jail for carjacking, he may well have been involved in the attack on Langel. Such testimony is inadmissible under rule 404(b) of the Texas Rules of Criminal Evidence, which precludes admissibility of "evidence of other crimes, wrongs, or acts ... to prove the character of a person in order to show that he acted in conformity therewith."

Finally, the testimony could not be used to impeach Garrett. Specific instances of conduct of a witness, other than conviction of crime as provided in rule 609, may not be inquired into on cross-examination, nor proved by extrinsic evidence, for the purpose of attacking or supporting the witness's credibility. *See* TEX.R.CRIM.EVID. 608(b).

We do note that a witness can be examined concerning bias or interest. *See* TEX.R.CRIM. EVID. 612(b). In *Blackmon,* the trial court directed the witness to respond to a question establishing that he could still be charged in the extraneous offenses. *Blackmon,* 642 S.W.2d at 500. Similarly, in the instant case, Garrett testified that the pending charge had not yet been presented to a grand jury, and the State had not promised him anything in exchange for his testimony. Any further

testimony regarding the underlying facts of the unadjudicated, unrelated offense would not have been relevant.

Accordingly, we conclude that evidence regarding the facts of Garrett's pending aggravated assault charge was not related to his testimony on direct examination. We further conclude that a response to the proffered question was potentially incriminating, and Garrett timely invoked his privilege. In light of the above, we overrule appellant's first point of error.

■ In his second point of error, appellant contends the trial court's action in sustaining Garrett's assertion of his privilege against self-incrimination deprived him of his right to make a bill of exception regarding the substance of Garrett's testimony. Appellate review of bills of exception and offers of proof are governed by rule 52(b) of the Texas Rules of Appellate Procedure, which provides in relevant part:

A transcription of the reporter's notes showing the offer, whether by concise statement or question and answer, showing the objections made, and showing the ruling thereon, when included in the record certified by the reporter, shall establish the nature of the evidence, the objections and the ruling. The court may add any other or further statement which shows the character of the evidence, the form in which it was offered, the objection made and the ruling. No further offer need be made.

The right to make an offer of proof or perfect a bill of exception is absolute. *See M.A.B. v. State,* 718 S.W.2d 424, 425–26 (Tex. App.—Dallas 1986, no pet.). In this case, the trial court allowed appellant to make a bill of exception in accordance with rule 52(b). But, because the witness invoked his Fifth Amendment privilege against self-incrimination, appellant was unable to elicit testimony about the underlying facts of the pending aggravated assault charge. We have already concluded that Garrett properly invoked his privilege; thus, the trial court did not err in disallowing such questioning by way of bill of exception. Appellant does not contend he was prevented from asking other questions

unrelated to Garrett's pending charge or from making a concise statement of the excluded evidence. Therefore, we find no error in the trial court's handling of the bill of exception. Point of error number two is overruled.

## Conclusion

For the reasons set forth above, the judgment of the trial court is affirmed.