MEMORANDUM OPINION


No. 04-07-00366-CR



Melvin DAVIS,


Appellant



v.



The STATE of Texas,


Appellee



From the 187th Judicial District Court, Bexar County, Texas


Trial Court No. 2006-CR-4339


Honorable Pat Priest, Judge Presiding



Opinion by: Alma L. López, Chief Justice


Sitting: Alma L. López, Chief Justice

 Phylis J. Speedlin, Justice

 Rebecca Simmons, Justice


Delivered and Filed: May 14, 2008 


AFFIRMED

 Melvin Davis appeals his murder conviction contending that his right of confrontation was
violated and the trial court abused its discretion in admitting a photograph into evidence. Because
the issues in this appeal involve the application of well-settled principles of law, we affirm the trial
court's judgment in this memorandum opinion.

1. In his first issue, Davis contends that his right of confrontation was violated when the trial
court allowed a witness, Sedrick Johnson, to invoke his Fifth Amendment privilege against self-incrimination during cross-examination. Davis was on trial for the murder of Johnson's step-father,
Stanley Williams. In exchange for his testimony, Johnson was given immunity by the State from
any charges relating to his involvement with marijuana on the date of Wiliams's murder.

 On direct-examination, Johnson testified that in February of 2006, he and Ronnardo Farrley
were at Farrley's apartment where Johnson was living. Davis arrived later, and Johnson left with
Davis to take Davis to Williams's apartment to purchase marijuana. Davis drove Johnson to the
apartment but waited outside because Johnson's mother did not want anyone in their apartment. 
Johnson went inside the apartment and retrieved the marijuana and a scale from Williams. Davis
weighed out the marijuana, and Johnson returned to Williams's apartment with the scale and the
money. Johnson returned to the car, and Davis drove him back to Farrley's apartment and left. 
Farrley and Johnson were smoking marijuana when Davis returned acting strange. Davis threw a
bag of marijuana on the floor and said it was short. Johnson told Davis he would try to get his
money back, and Davis drove Johnson back to Williams's apartment. Johnson approached Williams
who was waiting outside for a cab. As Johnson was telling Williams that Davis wanted his money
returned, Davis approached and said, "Y'all niggers are trying to fuck me." Davis raised his shirt,
and Johnson saw a chrome gun. Johnson and Williams both turned to run, and Johnson heard
gunshots. Williams was shot and had blood gushing out of his mouth.

 Farrley testified before Johnson at trial. Farrley's testimony was consistent with Johnson's
testimony on direct examination with regard to the events that occurred at Farrley's apartment. 
When Farrley was questioned with regard to whether he and Johnson were dealing cocaine together
from April to October of 2006, the trial court sustained the State's objections. Farrley then admitted
that he was currently charged with possession of cocaine but denied that Johnson also was charged
with the offense. Farrley denied that he was getting the drugs he was dealing from Johnson.

 Before Johnson's testimony, the State requested a motion in limine regarding the cocaine
case involving Farrley. After consulting with an attorney, Johnson indicated that he would invoke
his privilege against self-incrimination with regard to the cocaine case with which Farrley was
charged that happened in October of 2006, eight months after the murder. The trial court then
granted the motion in limine as to the cocaine case; however, the trial court stated that defense
counsel could inquire into a continuing relationship between Johnson and Farrley "if somehow it is
your theory of the case that the two of them have concocted this story to shift blame to your client
or something."

 On cross-examination, Johnson admitted that he sold drugs with Farrley "a long time ago." 
The trial was held in April of 2007, and Johnson subsequently admitted that he sold drugs with
Farrley "probably eight, nine months ago." After consultation with his attorney, Johnson then
invoked his privilege against self-incrimination with regard to any drug dealing involving Farrley
and himself. After the trial court instructed the jury that Johnson had exercised his Fifth Amendment
privilege with regard to testimony relating to Farrley and Johnson dealing drugs, defense counsel's
objection based on the Confrontation Clause was overruled.

 The Sixth Amendment guarantees the right of an accused in a criminal prosecution to be
confronted with the witnesses against him, and a primary interest secured by the Confrontation
Clause is the right of cross-examination. Lopez v. State, 18 S.W.3d 220, 222 (Tex. Crim. App.
2000). The trial court, however, maintains broad discretion to impose reasonable limits on cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, and
the injection of cumulative or collateral evidence. Id.

 When a witness invokes his privilege against self-incrimination during cross-examination,
a distinction must be drawn between cases in which the assertion of the privilege merely precludes
inquiry into collateral matters and those in which the assertion of the privilege prevents inquiry into
matters about which the witness testified on direct examination. United States v. Cardillo, 316 F.2d
606, 611 (2nd Cir. 1963); Blackmon v. State, 642 S.W.2d 499, 501-02 (Tex. Crim. App. 1982). "A
'collateral' question is one which seeks to test the witness'[s] general credibility, or relates to facts
irrelevant to the issues at trial." Keller v. State, 662 S.W.2d 362, 365 (Tex. Crim. App. 1984). 

 In this case, questions relating to Johnson's involvement in drug dealing with Farrley months
after Williams's murder were collateral questions. The drug dealing was unrelated to the murder
offense and Johnson's potential involvement in other drug dealings was not included in his
agreement with the State. Defense counsel appeared to be asking the trial court to allow him to
question Johnson regarding his potential involvement in drug dealing subsequent to the murder on
the basis of speculation as to the pressure Johnson might have felt to testify favorably for the State. 
"Speculation about a witness'[s] ulterior motives for testifying against [a] defendant is of little
probative value as impeachment. Furthermore, such speculation invites harassment, can lead to
delays of the trial as motives of each witness are explored by the parties, and can confuse the issues
and the jury." Carrillo v. State, 591 S.W.2d 876, 887 (Tex. Crim. App. 1979), overruled on other
grounds, Reed v. State, 744 S.W.2d 112, 125 n.10 (Tex. Crim. App. 1988). Defense counsel was
permitted to ask a broad range of questions concerning the circumstances and events on the date of
the murder, including questions regarding the initial statement Johnson gave to the police in which
he failed to disclose his involvement in the marijuana transaction. Under these circumstances, the
trial court did not abuse its discretion in allowing Johnson to invoke his Fifth Amendment privilege
with regard to any subsequent drug dealing involving Johnson and Farrley. See Parra v. State, 935
S.W.2d 862, 873-75 (Tex. App.--Texarkana 1996, pet. ref'd) (holding trial court did not abuse its
discretion in permitting witness to invoke privilege on matters pertinent to his credibility and prior
drug dealings); see also Gongora v. State, No. AP-74636, 2006 WL 234987, at *2-4 (Tex. Crim.
App. Feb. 1, 2006) (holding trial court did not abuse its discretion in preventing appellant from
cross-examining witness regarding an unrelated offense for which there was no evidence
demonstrating the witness's involvement) (not designated for publication). Davis's first issue is
overruled.

2. In his second issue, Davis contends that the trial court abused its discretion in admitting a
photograph of Williams taken at the crime scene because the photograph was more prejudicial than
probative and improperly inflamed the jury. The admissibility of a photograph is within the sound
discretion of the trial judge. Shuffield v. State, 189 S.W.3d 782, 786 (Tex. Crim. App. 2006). Rule
403 allows the trial court to exclude evidence when its probative value is substantially outweighed
by the danger of unfair prejudice. Tex. R. Evid. 403. In the context of a trial court's admitting a
photograph over a Rule 403 objection, we consider factors such as: the number of exhibits offered,
their gruesomeness, detail, size, and color, whether the body is naked or clothed, and the unique
circumstances of the individual case. Shuffield, 189 S.W.3d at 787; Vasquez v. State, 2 S.W.3d 355,
360 (Tex. App.--San Antonio 1999, pet. ref'd). 

 In this case, only two photographs of Williams were offered into evidence. One photograph
was of Williams prior to his injuries, and the second photograph was of Williams in the EMS unit
on a stretcher which was taken at the crime scene. The second photograph is small in size, "show[s]
only the injuries that the victim received and [is] no more gruesome than would be expected." 
Shuffield, 189 S.W.3d at 787-88; Vasquez, 2 S.W.3d at 360. The trial court did not abuse its
discretion in admitting the photograph into evidence. Davis's second issue is overruled.

 The trial court's judgment is affirmed.

 Alma L. López, Chief Justice

DO NOT PUBLISH