# MARCH, 1915.

## Ex Parte John Adams.

No. 3456.   Decided February 17, 1915.

Rehearing denied March 3, 1915.

**1.—Habeas Corpus—Justice of the Peace—Contempt—Witness.**

Where relator was summoned as a witness before a justice of the peace, who under articles 976 and 677, Code Criminal Procedure, was conducting a court of inquiry, and voluntarily and without any objection answered all questions and stated all facts which would incriminate him, and it was only when the said questions asked him would incriminate another that he refused to answer, claiming that his answers would incriminate him, there was no error in the court's action in committing him for contempt. Following Ex parte Park, 37 Texas Crim. Rep., 590, and other cases. Davidson, Judge, dissenting.

**2.—Same—Rule Stated—Incriminating Testimony—Privilege of Witness.**

Under the authorities, the objection of privilege, that is, that the answer to the question would tend to incriminate the witness must be made at the threshold, and he can not wait and answer a part, and then refuse to answer other questions legitimate to a cross-examination; and if he voluntarily states a part of the testimony, he waives his right and can not afterward stand on his privilege.

**3.—Same—Rule Stated—Functions of Court.**

In the first instance, it must appear to the court from the character of the question and the other facts adduced in the case that there is some tangible and substantial probability that the answer of the witness may help to convict him of a crime; the liability must appear reasonable to the court, or the witness will be compelled to answer.

Appeal from the District Court of Johnson.   Tried below before the Hon. O. L. Lockett.

Appeal from a habeas corpus proceeding remanding relator to custody, for refusing to answer certain questions propounded to him by a justice of the peace holding a court of inquiry.

The opinion states the case.

W. E. Myres and W. B. Featherstone, for relator.—Cited Ex parte Napolean, 65 Texas Crim. Rep., 307, 144 S. W. Rep., 269.

C. C. McDonald, Assistant Attorney General, for the State.

PRENDERGAST, Presiding Judge.—This is an appeal from the order of the district judge on habeas corpus, remanding appellant, under the judgment of the justice of the peace, for contempt in refusing to answer certain questions.

We have these statutory provisions: "When a justice of the peace has good cause to believe that an offense has been, or is about to be, committed against the laws of this State, he may summon and examine any witness or witnesses in relation thereto; and, if it shall appear from the statement of any witness or witnesses that an offense has been committed, the justice shall reduce said statements to writing, and cause the same to be sworn to by the witness or witnesses making the same; and, thereupon such justice shall issue a warrant for the arrest of the offender, the same as if complaint had been made out, and filed against each offender." (C. C. P., art. 976.)

"Witnesses summoned under the preceding article who shall refuse to appear and make a statement of facts, under oath, shall be guilty of a contempt of court, and may be fined not exceeding one hundred dollars and may be attached and imprisoned until they make such statement." (C. C. P., art. 977.)

The justice of the peace, M. L. Daniels, was proceeding under these articles and had before him the appellant. We copy the order he made as follows:

"Be it remembered that on the 5th day of February, A. D. 1915, M. L. Daniels, a justice of the peace of precinct No. 1, Johnson County, Texas, sitting as a court of inquiry in Cleburne, Johnson County, Texas, and having under investigation the question as to whether or not the parties who run and control the Oklahoma Wagon Yard, situated in Cleburne, Johnson County, Texas, were violating the local option liquor laws, which are now in force in Johnson County, Texas, had before him one John Adams, who, after being interrogated under his oath, after having been duly and legally sworn by said justice of the peace, admitted and testified that on the second day of February, 1915, he had in his possession in Johnson County, Texas, a wagon and team belonging to Baylor Looper, who owns and controls the Oklahoma Wagon Yard in Cleburne, as aforesaid, and that said wagon was loaded with twenty-four gallons of whisky in one-half-pint bottles and 248 pint bottles of beer, and who also admitted that said intoxicating liquors were obtained by him in Fort Worth, Texas, on the order of three or four different parties, and that he had been instructed to bring said intoxicating liquors and deliver them at the Oklahoma Wagon Yard, in said Cleburne, Johnson County, Texas, whereupon the following questions were propounded to said witness by the county attorney of

Johnson County, Texas, who was conducting said investigation before the said justice of the peace:

"First. Were your instructions to buy said intoxicating liquor and transport it to the Oklahoma Wagon Yard in Cleburne, Texas, verbal or in writing? Second. Who gave you said instructions, and if they were in writing, to whom did you deliver them? Third. To whom were you going to deliver said intoxicating liquor when you arrived in Cleburne? Fourth. Who sent you after said intoxicating liquor; give the name of each one that you talked with about making said trip to Fort Worth after said liquor. Fifth. Who authorized you or delivered to you the wagon and team of Baylor Looper, and when and where was said team delivered to you and by whom? Sixth. Give the names of every person who was present at the time when the trip to Fort Worth, after said liquor was talked or at the time when the team was delivered to you. Seventh. To whom did you deliver the orders for said liquor at Fort Worth, Texas? Eighth. Who delivered said liquors to you; give the name of the street, the name of the person, and the number of the place where they were delivered to you. Ninth. Did you pay for said intoxicating liquor or make any arrangement to pay for the same for any other party while you were there? Tenth. Do you know who furnished the money to pay for said liquor or any part thereof, and if so state who it was and how the arrangement was made. Eleventh. Was any part of said intoxicating liquor intended to be used by you individually or by your family, if so state what part or portion or quantity.

"To each and all of the foregoing questions the witness John Adams then and there before said court of inquiry while the same was in session refused to answer, except question No. 5, which he answered as follows. Baylor Looper authorized me to get said team and delivered said team to me at the Oklahoma Wagon Yard, in Cleburne, Texas, about 12 o'clock daytime on the 2nd day of February, 1915.

"And to the witness failing to answer each and all of said questions except the fifth, the said court, M. L. Daniels, here and now holds said witness in contempt of court, and here commits the said witness to be confined in the jail of Johnson County, Texas, by the sheriff of said county.

"It is therefore ordered, adjudged and decreed by said court that said witness is hereby committed into the custody of the sheriff of said county, to be by him confined in the jail of said county until said questions have been answered by said witness or until further ordered by said court.

"Witness my hand this the 5th day of February, A. D. 1915.

"M. L. Daniels,

"Justice of the Peace, Prect. No. 1, Johnson County, Texas."

The proper writ was issued on this order to the sheriff and under it he took charge of and placed said Adams in jail. He thereupon sued out, as stated, a writ of habeas corpus before the district judge, who,

after hearing all the evidence and examining all the papers, remanded said Adams to the custody of the sheriff.

From the judgment of the justice of the peace it is clearly seen that the appellant voluntarily and without any objection answered all questions and stated all facts, if any, which would incriminate him, and it was only when the said questions asked him which would incriminate another, that he refused to answer, claiming that his answers would incriminate him.

In the well considered case of Ex parte Park, 37 Texas Crim. Rep., 590, this court held (p. 596):

"Under the authorities, as we understand them, the objection of privilege—that is, that the answer to the question would tend to criminate him—must be made at the threshold. He can not wait and answer a part, and then refuse to answer other questions legitimate to a cross-examination. If he voluntarily states a part of the testimony, he waives his right, and can not afterwards stand on his privilege. If it were otherwise, he might give in testimony hurtful to a defendant, but refuse to be cross-examined as to matters which might be to defendant's benefit. See Rap. Wit., sec. 269; Whar., Crim. Ev., sec. 470; State v. Blake, 25 Me., 350; Com. v. Price, 10 Gray, 472; People v. Freshour, 55 Cal., 375; Connors v. People, 50 N. Y., 240; State v. K., 4 N. H., 562. The latter case, of State v. K., is so much to the point that we quote the opinion in full. K. was indicted for unlawfully breaking and entering a public burial place, and taking up and carrying away the body of a person who had been interred. On the trial, the defendant called a witness, who stated that he knew defendant to be innocent, but that he could not state how he knew that without implicating himself, and he inquired of the court whether or not he was bound to testify at all, and if bound to testify, how far he was compelled to go. The court used the following language: 'The witness is not to be compelled to answer any question if the answer will tend to expose him to a criminal charge; but if he state a particular fact in favor of the respondent, he will be bound on his cross-examination to state all of the circumstances relating to that fact, although in doing so he may expose himself to a criminal charge. We shall not compel the witness to state that he knows the respondent to be innocent if a full account of his knowledge on that subject will tend to furnish evidence against himself. But, if he testifies to that fact, we shall permit the Attorney General to inquire how the witness knows that fact, and compel him to answer the question. It is clearly inadmissible to permit a witness to give a partial account of his knowledge of the transaction, suppressing other of the circumstances, whether the evidence is to be used in favor of or against the State.'"

It is further said and held in said case (pp. 594-595):

"We hold that this matter is, in the first instance, to be determined by the court or judge; that is, 'it must appear to the court from the character of the question and the other facts adduced in the case that there is some tangible and substantial probability that the answer of

the witness may help to convict him of a crime. The liability must appear reasonable to the court, or the witness will be compelled to answer.' See Ex parte Irvine, 74 Fed. Rep., 954, which is an exhaustive discussion of this question, and the authorities there cited; Fries v. Brugler, 12 N. J. Law, 79, reported in 21 Am. Dec., 52, and note thereto on page 57; People v. Mather, 4 Wend., 229, reported in 21 Am. Dec., 122, and authorities cited in note thereto. We quote from Whar., Crim. Ev., sec. 466, as follows: 'To protect the witness from answering, it must appear from the nature of the evidence which the witness is called to give that there is reasonable ground to apprehend that, should he answer, he would be exposed to a criminal prosecution. The witness, as will be seen, is not the exclusive judge as to whether he is entitled on this ground to refuse to answer. The question is for the discretion of the judge, and, in excusing this discretion, he must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence. But, in any view, the danger to be apprehended must be real, with reference to the probable operation of law in the ordinary course of things, and not merely speculative, having reference to some remote and unlikely contingency.' Mr. Wharton further says (sec. 469): 'The witness is not the sole judge of his liability. The liability must appear reasonable to the court, or the witness will be compelled to answer. Thus, a witness may be compelled to answer as to conditions which he shares with many others, though not as to conditions which would bring the crime in inculpatory nearness to himself. But, in order to claim the protection of the court, the witness is not required to disclose all the facts, as this would defeat the object for which he claims protection. It is not, indeed, enough for the witness to say that the answer will criminate him. It must appear to the court, from all the circumstances, that there is a real danger, though this the judge, as we have seen, is allowed to gather from the whole case, as well as from his general conception of the relations of the witness. Upon the facts thus developed it is the province of the court to determine whether a direct answer to a question may criminate.' And see authorities cited in notes to said sections. This rule has been followed in this State. See Floyd v. State, 7 Texas, 215."

This case has many times,—and the principles announced in it,—been reaffirmed by this court. The questions are so well settled we deem it unnecessary to further discuss them, or cite other authorities. In our opinion, under the circumstances of this case, the answer of the appellant, whatever it might be, to each and all of the questions propounded would not tend to incriminate him and under the circumstances as shown by this record, he should be compelled to answer each and all of them, and held in contempt and confinement until he does so and purges himself of the contempt.

The judgment will be affirmed.

*Affirmed.*

[Rehearing denied March 3, 1915.—Reporter.]

DAVIDSON, Judge (dissenting).—My brethren dispose of this case upon the theory, first, that the answers of relator would not show that he had violated the law, and, second, that having taken the witness stand, he must tell everything and can not refuse to testify. The case of Ex parte Park, 37 Texas Crim. Rep., 590, does not sustain their second position. That case expressly holds that the witness can not be made to testify against himself. Relator was not a volunteer witness in the case. If he had been indicted and was testifying in his own behalf, then he would be required to answer questions, but in this case he was compelled to testify as far as he did in a court of inquiry and refused to continue giving testimony. He had not agreed to testify; was not a voluntary witness, and, therefore, did not waive and could not be held to waive any right attached to him under the Constitution and laws of Texas. If he had made an agreement to testify against others who were engaged in violations of the law with him, or to facts that might incriminate him, then he could testify or not at his option. He could make the agreement and then refuse to be bound by it. The cases are quite numerous, but I cite Neeley v. State, 27 Texas Crim. App., 324; Nicks v. State, 40 Texas Crim. Rep., 1; Ex parte Park, 37 Texas Crim. Rep., 590; Stevens v. State, 42 Texas Crim. Rep., 154. The State, under such circumstances, may hold the indictment against him until he has complied with the agreement and testified. Ex parte Greenhaw, 41 Texas Crim. Rep., 278; Oates v. State, 48 Texas Crim. Rep., 131; Ex parte Gibson, 42 Texas Crim. Rep., 653; Ex parte Carter, 62 Texas Crim. Rep., 113.

I can not agree with the majority that had relator testified truthfully his answers would not have incriminated him in a violation of some of the liquor laws, and especially what is known as the Allison Act as construed by my brethren in the recent cases of Johnson v. State and Perryman v. State. Of course, I did not agree to those opinions. If, as indicated, relator was carrying the intoxicating liquors found in his possession from Fort Worth to parties in Johnson County, which is a local option territory, for the benefit and use of the consignees or their families, the burden of proof would be on him as held by the majority to show that these consignees were going to use it exclusively for their use or the use of their families. Such is the rule laid down by the majority in Johnson v. State and Perryman v. State, supra. This would be more than a difficult proposition, especially in view of the fact that he was carrying twenty-four gallons of whisky and two hundred and forty-eight bottles of beer. Under that view of it the burden of proof would be shifted from the State to the defendant, and he would have to prove the honesty of the transaction and that the consignees were going to use the intoxicating liquors individually. This would place him, under the facts of this case, beyond the hope of an acquittal under a charge for transporting all this intoxicating liquor and require of him the impossible task of keeping strict guard and watch upon the consignees to see that they only used it for themselves or their families until the entire quantity was consumed. If he failed

to prove that the consignees were going to use it as indicated, then he would be consigned to a felon's cell for the transportation. The presumption of innocence is in favor of the accused or citizen and not the State.

Inasmuch as my brethren have confined themselves to the two questions stated I do not purpose to go further in writing this dissent. They place their proposition on the idea that relator's answers would not show he violated any law. The question of immunity from punishment was not, therefore, discussed, because if he was not guilty there could be no immunity from punishment; he would not be guilty. As the majority opinion presents the matter I do not care to write further. As the opinion is written I believe it is clearly erroneous, and I therefore dissent.