Leonard Charles **GRAYSON**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 229–84, 922–84.

Court of Criminal Appeals of Texas, En Banc.

Dec. 19, 1984.

---

1. All emphasis is supplied by the writer of this opinion unless otherwise indicated.

Kerry P. Fitzgerald, Dallas, Bill Glaspy, Mesquite, for appellant.

Henry Wade, Dist. Atty. and Jeffrey B. Keck, Jerry Banks and Paul Macaluso, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

THOMAS G. DAVIS, Judge.

Appellant was charged by two indictments with the offense of attempted capital murder. Each indictment was enhanced by two prior felony convictions. The cases were joined for trial before a jury. The jury found appellant guilty of both offenses, found the enhancement allegations true, and assessed punishment at life imprisonment for each offense. The Fifth Court of Appeals (Dallas) affirmed both convictions in an unpublished opinion. *Grayson v. State*, Nos. 05–82–00855 and 00856–CR, 12–27–83. We granted appellant's petition for discretionary review to

examine the Court of Appeals' holding that the trial court properly refused to allow appellant to question a defense witness in the presence of the jury because the witness had not waived her Fifth Amendment privilege against self-incrimination.

This case rose out of a drug raid on a residence in Dallas. Gunfire from the residence wounded two police officers taking part in the raid. Several people were in the residence at the time, and appellant's defense was that some other occupant had shot the officers.

Appellant took the stand at the guilt-innocence phase and testified at length. His counsel then sought to call as a witness Janice Joiner, who had been present in the house at the time of the shooting.

The trial judge retired the jury and had Joiner, who was under indictment and in custody of the Sheriff's Department, brought in. The judge then permitted Joiner to consult her attorney, who was also in the courtroom, about "whether or not she is willing or desires to testify in this case."

After a brief recess, and with the jury still out of the courtroom, Joiner was sworn and took the stand. The following exchange took place:

"THE COURT: Now, let—the defense has requested to call you as a witness in the trial of the State of Texas versus Mr. Grayson.

"Let the record reflect Mr. John Read, counsel representing you, is present and has spoken with you for several minutes now. I'm sure he has properly advised you of all of your constitutional rights regarding your right to testify or to refuse to testify.

"And I understand from conversations with Mr. Read that he is recommending that you go ahead and testify. I understand your case is set for trial Monday.

"But let me ask you, if I bring the jury in and you are asked question in this case, is it your desire to testify or not to testify?

"THE WITNESS: I'd rather take the Fifth Amendment.

"THE COURT: You want to invoke the Fifth Amendment. In other words, you do not want to testify; is that correct?

"THE WITNESS: No.

"THE COURT: All right. You certainly have that right, under the Constitutions, to do so."

The court kept Joiner on the stand so that appellant's counsel could make a bill of exceptions. The questioning went as follows:

"BY MR. GLASPY [defense counsel]:

"Q. State your name, please, ma'am.

"A. Janet—

"MR. BANKS [prosecutor]: Judge, even for purposes of the bill, are you going to allow her to testify, if she desires to invoke—

"THE COURT: No, no. She's not—she can state her name, but beyond that, I imagine that Mr. Read is going to instruct her not to answer.

"MR. BANKS: Oh, okay.

"THE COURT: Go ahead and state your name.

"A. Janet Marie Joiner.

"Q. Janet Marie Joiner?

"A. Uh-huh.

"Q. Where did you live before you were placed in jail?

"A. 1903 Life.

"Q. Is that in Dallas, Texas?

"A. Yes.

"Q. It's my understanding that you were arrested at 1959 Dennison; is that correct?

"A. I don't quite understand 'registered.'

"Q. You were arrested, were you not, December the 14th?

"A. Oh, yes.

"Q. 1959 Dennison?

"A. Yes.

"Q. When the police came in the front door, what room were you in?

"A. I—

"MR. READ: Ms. Joiner, I'm going to advise you at this time you don't have to answer if you don't want to. You can invoke the Fifth Amendment.

"THE WITNESS: Well, I will answer that.

"A. I was in the living room, fixing to answer the door. I was in the living room.

"MR. GLASPY: I'll pass the witness.

"MR. BANKS: I have no further questions of this witness. At this time."

Following another brief recess, the court addressed Joiner again:

"THE COURT: During the recess, you have had time to counsel with your attorney further, and I take it he has advised you that if we bring the jury in and you elect to answer one or more questions dealing with the facts out there, other than the biographical questions like what your name is and where you live, at that time you are giving up any right against self-incrimination that you might have under the Constitution, and would have to instruct you to answer all the questions that are asked you here in this hearing.

"Is that basically what you have been discussing with him?

"THE WITNESS: Yes, sir.

"THE COURT: All right. At the time you answered, you chose to answer the question a moment ago regarding what room of the house you were in, were you aware of the fact that if you chose to answer some of the questions, you would be ordered and required by law to answer all of them?

"THE WITNESS: No.

"THE COURT: All right. You are now aware of that fact?

"THE WITNESS: Yes.

"THE COURT: Now that you are aware of that fact, let me ask you if we bring

the jury out and Mr. Glaspy proceeds to ask you other questions about what might have occurred in the house out there that day, whether or not you desire to answer them for the jury?

"THE WITNESS: No.

"THE COURT: All right. I take it by your answer of no that you are representing to me that you did not understand this a few moments ago, and that you still want to persist in exercising your rights under the Fifth Amendment not to testify in this case; is that correct?

"THE WITNESS: Yes.

"THE COURT: And you don't want to testify in any manner, shape or form; is that right?

"THE WITNESS: That's right.

"THE COURT: All right. Mr. Glaspy, I will allow you to go ahead and ask some more questions at this time while the jury is not present, and I will abide by the witness's answers, whether or not she desires to exercise her Fifth Amendment right not to testify or whether she is willing to go ahead and answer the questions.

"In the event she does desire to exercise her Fifth Amendment right not to testify, I—it will be the ruling of the Court that the mere fact that she did answer the single question a few moments ago did not represent a knowing and voluntary waiver of her rights against self-incrimination, and I will honor her request not to testify.

"And you may have your objection and exception to that ruling ..."

Appellant's counsel then asked Joiner five questions about events surrounding the shooting.[1]   Joiner replied by invoking

---

1. The questions were, in the order asked:

"Q. Ms. Joiner, when the police came through the front door of that house, were you knocked down by one of the police officers?"

"Q. Ms. Joiner, were you in the room where the witnesses—where the shooting occurred?

"Q. After all of the transactions went down, Ms. Joiner, did you hear anybody say that Wayne Morris did the shooting?"

"Q. Ms. Joiner, after all of the witnesses—after all of the shooting had occurred and everybody was placed under arrest, did you hear [appellant] say that Wayne Morrison did the shooting?"

"Q. Ms. Joiner, after all of the witnesses were arrested and you were under arrest, did you hear [appellant] say that Rufus Pyburn did the shooting?"

the Fifth Amendment each time. Appellant's counsel then stated to the trial judge:

"MR. GLASPY: Your Honor, the last two or three questions that we asked are after the offense occurred totally, everybody's been arrested, and we would like to have those answers to those questions.

"THE COURT: I can appreciate that fact, Mr. Glaspy, but the ruling of the Court must be—and so that the record is clear, this witness is under indictment for a violation of the Controlled Substances Act, arising out of the same house on the same date, same transactions that have been testified to by other witnesses in this case.

"That indictment is currently pending in the 292nd Judicial District Court of Dallas County, the Honorable Michael Keasler presiding.

"And that being the case, it will be the Court's ruling that I will not require the witness to open herself up to cross-examination as to other facts and events on the day in question which could conceivably be incriminating to her defense against that indictment."

■ The Fifth Amendment privilege against self-incrimination is binding upon the states, and "the same standards must determine whether an accused's silence in either a federal or state proceeding is justified." *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

■ The Court of Appeals applied the standard of *Klein v. Harris,* 667 F.2d 274, 287 (2nd Cir.1981), that a waiver of the privilege should be inferred from a witness' prior statements only if: "(1) the witness' prior statements have created a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth, and (2) the witness had reason to know that his prior statements would be interpreted as a waiver of the fifth amendment's privilege against self-incrimination." The court reasoned that because the jury heard none of Joiner's testimony, the finder of fact was not left with nor prone to rely on a distorted view of the truth. Under the

test of *Klein v. Harris,* the court found no waiver.

The need to avoid distortion of the evidence is one concern of *Rogers v. United States,* 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951). In *Rogers,* petitioner testified under subpoena before a federal grand jury that she had held the post of Treasurer of the Communist Party of Denver until January, 1948, and that, by virtue of her office, she had been in possession of membership lists and dues records of the Party. She denied having the records any longer, and testified that she had turned them over to another. When asked to identify the person to whom she gave the Party's books, she refused.

The Supreme Court affirmed petitioner's commitment for contempt. The Court noted that her claim of the privilege against self-incrimination "came only after she had voluntarily testified to her status as an officer of the Communist Party of Denver. To uphold a claim of privilege in this case would open the way to distortion of facts by permitting a witness to select any stopping place in the testimony."

This Court, too, has long recognized the hazard:

"It is clearly inadmissible to permit a witness to give a partial account of his knowledge of the transaction, suppressing other of the circumstances, whether the evidence is to be used in favor of or against the state."

*Ex parte Park,* 37 Tex.Cr.R. 590, 40 S.W. 300 (1897) (quoting with approval *State v. K.,* 4 N.H. 562 (1829)).

■ In the instant case, the jury was the finder of fact. The witness Joiner gave her testimony out of the presence of the jury, and for the purpose of appellant's bill of exceptions. The jury could not have been misled by Joiner's partial disclosure because the jury did not hear it. The Court of Appeals correctly found no waiver of the privilege under the "distortion" criterion of *Rogers, Klein,* and *Park.*

According to one authority, understanding the *Rogers* decision as "merely an

application of the general requirement that a demanded answer be incriminating" provides a more satisfactory rationale than the "distortion" interpretation of Klein v. Harris. C. McCormick, McCormick On Evidence, Sec. 140 at 346 (3rd ed. 1984).

The *Rogers* court reasoned as follows: "[W]hen petitioner was asked to furnish the name of the person to whom she turned over Party records, the court was required to determine, as it must whenever the privilege is claimed, whether the question presented a reasonable danger of further crimination in light of all the circumstances, including any previous disclosures. As to each question to which a claim of privilege is directed, the court must determine whether the answer to that particular question would subject the witness to a 'real danger' of further crimination."

*Rogers*, 340 U.S. at 374, 71 S.Ct. at 442.

Citing the language quoted above, McCormick comments:

"Rogers' contempt commitment was upheld because the Court found the question at issue would not increase her danger of prosecution and conviction. This, of course, provides a satisfactory rationale for the *Rogers* result that requires recourse to neither waiver considerations nor the danger of distortion presented by any particular facts. It further provides the basis for a criterion for applying *Rogers* to additional situations. Most courts appear to have relied exclusively on this rationale and have asked in such situations whether responding to the question asked would, given the witness' prior testimony, increase the risk of incrimination. Only if the answer is nega-

tive has the witness lost the right to claim the privilege.

McCormick, supra, ibid.

■ In *Hoffman v. United States*, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951), the Court wrote:

"'To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it was asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result."

The trial court cannot compel a witness to answer unless it is perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken in asserting the privilege, and that the answer cannot possibly tend to incriminate the witness. *Hoffman*, supra, quoting from *Temple v. Commonwealth*, 75 Va. 892 (1881).

■ Moreover, in *Malloy v. Hogan*, supra, the Court quoted with approval the following from *United States v. Coffey*, 198 F.2d 438, 440–441 (3rd Cir.1952):

"[I]n determining whether the witness really apprehends danger in answering a question, the judge cannot permit himself to be skeptical; rather must he be acutely aware that in the deviousness of crime and its detection incrimination may be approached and achieved by obscure and unlikely lines of inquiry."

*Malloy v. Hogan*, 378 U.S. at 13, 84 S.Ct. 15 1496, n. 9.[2]

■ In the instant case, the trial judge voiced the proper concern when he said, "I will not require the witness to open herself up to cross-examination as to other facts

---

**2.** *Rogers, Hoffman,* and *Malloy v. Hogan* were inquisitorial cases that lacked any conflict between the witness' Fifth Amendment privilege and a defendant's Sixth Amendment right to compulsory process. Nevertheless, we have stated that even in a criminal prosecution the accused's right to compulsory process under the Sixth Amendment does not override a potential witness' Fifth Amendment privilege against self-

incrimination. *Ellis v. State*, 683 S.W.2d 379 (Tex.Cr.App.1984), and cases cited therein; *Cunningham v. State*, 500 S.W.2d 820 (Tex.Cr.App. 1973); *Hall v. State*, 475 S.W.2d 778 (Tex. Cr.App.1972); *Thompson v. State*, 480 S.W.2d 624 (Tex.Cr.App.1972); see also Westen, The Compulsory Process Clause, 73 Mich.L.Rev. 71, 166–170 (1974).

and events on the day in question which could conceivably be incriminating to her defense against [the] indictment [pending against her]." The witness was to go to trial the following Monday on a charge of violating the Controlled Substances Act. The indictment against her rose out of a drug raid in which two police officers were shot, a number of suspects arrested, and weapons and drugs were confiscated (the same transaction that gave rise to the instant prosecution). In light of these circumstances, we do not find it "perfectly clear" that the answers demanded of the witness—and the consequent cross-examination [3]—could not possibly tend to incriminate her of the indicted offense or of some other offense arising from the events of the case on trial.

■ Finally, the trial court's ruling was correct under the standard of *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The witness was asked and answered a question about what room she was in at a certain time. She later told the trial judge that when she answered she had not known that by answering she might be giving up her right not to incriminate herself. She then reaffirmed her desire not to incriminate herself through further testimony. The record supports the conclusion that after asserting her Fifth Amendment privilege the witness did not voluntarily and intentionally relinquish a known right or privilege. *Johnson v. Zerbst,* supra.

The judgments of the Court of Appeals are affirmed.

CLINTON, Judge, dissenting.

Tension between the right of an accused to compulsory process and the right of a witness to claim the privilege, alluded to in note 2 of the majority opinion, is not a problem in the type of cases decided by the Supreme Court of the United States which the majority cites and discusses. In each the party seeking protection of the privilege had been haled to a grand jury or court of inquiry; upon declining to answer questions deemed incriminating, the inquisitor caused the party to be brought before the court for appropriate proceedings. Whether it held for or against the witness then depended on what the court found on the issue of "testimonial waiver." Thus, the Supreme Court did not confront, and in *Rogers v. United States,* 340 U.S. 367, 71 S.Ct. 438, 99 L.Ed.2d 344 (1951) expressly reserved, "the problems arising out of possible abuse of the privilege against self-incrimination in adversary proceedings," *id.,* U.S., at 373 n. 15, S.Ct., at 442 n. 15. Accordingly, the majority begs rationale in excessively relying on opinions of the Supreme Court written in what the Supreme Court itself recognizes is a quite different context.

The decision relied on by the Dallas Court of Appeals and now by this Court begins its discussion of the problem as follows:

> "There is no doubt that a waiver of the fifth amendment's privilege against self-incrimination may, in an appropriate case, be inferred from a witness' prior statements with respect to the subject matter of the case, *without any inquiry into whether the witness, when he made the statements, actually knew of the existence of the privilege and consciously chose to waive it. [Citation omitted]."* [1]

*Klein v. Harris,* 667 F.2d 274, 287 (CA2 1981). Thus, had Janice Joiner first testified before the jury as she did before the court, the inquiry made by the trial court would have been improper and its related

---

3. By answering on direct examination then asserting the privilege when asked a related question on cross-examination, the witness risks a finding of waiver under the "distortion" rationale discussed above. See *Malloy v. Hogan,* supra.

1. All emphasis is added by the writer of this opinion unless otherwise indicated.

actions, according to the *Klein* Court, "indefensible."[2] *Id.*, 280,[3] 289.[4]

Beyond that though, the Court is about to approve an intolerable infringement as well on the right of an accused to compulsory process as on the right of the State to claim "testimonial waiver" by a putative witness in similar circumstances. Since, unlike federal courts, this Court insists that a party "has no right to have a witness assert or invoke his Fifth Amendment in the presence of the jury," *Ellis v. State*, 683 S.W.2d 379 (Tex.Cr.App., No. 0143–83, delivered September 19, 1984) and cases cited therein, there has developed a nearly uniform practice for a trial judge to conduct a *voir dire* examination outside the presence of the jury to determine whether the proffered witness does indeed intend to invoke the privilege. To adopt for a such a hearing before the court the notion the Second Circuit applied where a recalcitrant witness had earlier testified before a jury to facts such that a waiver was inferred means that "testimonial waiver" cannot be found—the prior statements made by the witness will never create "a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth," *Klein*, supra, at 287.[5]

The leading decision on the subject in this jurisdiction is *Ex Parte Park*, 37 Tex. Cr.R. 590, 40 S.W. 900, 66 Am.St.Rep. 835 (1897). *Ex parte Adams*, 76 Tex.Cr.R. 277, 174 S.W. 1044 (1915); Ray, Texas Law of Evidence (Third Edition) § 476, 1 Texas Practice 465, n. 89.[6] Initially Park had been jointly indicted with two others, but after trial got underway the case against him was dismissed on motion by the State. The State then called Park to the witness stand and propounded a question that Park declined to answer on the ground that a truthful answer would tend to incriminate him of an offense against the law of this State. The trial judge held he was bound to answer, and upon his continued refusal found Park in contempt and remanded him to custody until he answered the question. In ordering Park discharged from custody, since the issue was not in the case, the Court dealt with "testimonial waiver" by way of explaining that "the objection of privilege—that is, that the answer to the question would tend to incriminate him— must be made at the threshold," so that when a witness "voluntarily states a part of the testimony, he waives his right, and cannot afterwards stand on his privilege." *Ex parte Park*, supra, 40 S.W. at 302.[7]

2. That is not to say that the writer shares such view, but to make the point that great care must be taken in treating this sensitive matter of constitutional dimension. *Klein*, at 289.

3. After the defense recalled the witness to the stand, "the judge advised [him] that he had the right to remain silent, and directed [his] attorney to stand at his client's side in order to advise him as to each question asked by [defense] counsel... [and when it was invoked] allowed [the witness] to assert the privilege. Moreover, he did not strike [his] earlier testimony on this subject."

4. "Here, the trial judge did not direct [the witness], upon being recalled to the stand, to answer the questions posed by [the defense]; nor did he threaten [him] with being held in contempt once he refused to answer those questions. Instead, the trial judge actively encouraged [the witness] not to answer the questions put to him... [and] failed to strike [his] prior testimony."

5. It occurs to me that the rare occasion for operation of the *Klein* formulation will be when a naive or unsophisticated witness makes "testi-

monial" and "incriminating" statements before the trier of fact, and thereafter attempts to invoke the privilege against self-incrimination. To thus restrict availability of relevant testimony to witnesses who do not know or are careless about asserting the privilege surely impedes our vaunted judicial search for the truth.

6. Notwithstanding earlier praises accorded it by the Court and Professor Ray, this Court has cautioned against taking its "broad statements... out of the context of that case." *Blackmon v. State*, 642 S.W.2d 499, 501 (Tex.Cr. App.1982).

7. In the days of *Park* and *Adams*, of course, all trials were to a jury and a witness might be called to the stand by one party or the other, only to hear him decline to testify on the ground that testimony sought would tend to incriminate him. Though the Court came to criticize that ploy consistently, see, e.g., *McClure v. State*, 95 Tex.Cr.R. 53, 251 S.W. 1099, 1102– 1103 (1925); *Rice v. State*, 121 Tex.Cr.R. 68, 51 S.W.2d 364 (1932); *Rice v. State*, 123 Tex.Cr.R. 326, 59 S.W.2d 119 (1933), disdaining such remedial measures as an attempt to withdraw

It is axiomatic that "in refusing to answer a question on the ground that the answer would tend to incriminate him, the witness is exercising a constitutional right personal to himself," *Glasper v. State*, 486 S.W.2d 350, 352 (Tex.Cr.App.1972), and "only the witness can take advantage of the right to decline to testify on [that] ground," *Ex parte Miers*, 124 Tex.Cr.R. 592, 64 S.W.2d 778, 780 (1933). Though Joiner was fully advised and indicated to the trial judge that she would "rather take the Fifth," without any doubt she overrode the express advice from her own lawyer that "you don't have to answer if you don't want to. You can invoke the Fifth Amendment," when she then voluntarily stated, "I will answer that [question]," and proceeded to do so. Just as obviously her answer "related part of the facts of the transaction," *Draper v. State*, 596 S.W.2d 855, 857 (Tex.Cr.App.1980), and was an incriminating admission that she was present in the house—in the living room "fixing to answer the door"—since presence is an evidentiary factor in possession cases. Factually Joiner waived the privilege "by exercising [her] option of answering," *Blackmon v. State*, supra, at 501, quoting approvingly Wigmore on Evidence (McNaughton Revision) § 2276(b)(1). See *Ex parte Miers*, supra, 64 S.W.2d at 780.

So long as this Court sanctions and upholds the practice that trial judges conduct a *voir dire* examination to determine whether a putative witness will claim the privilege, it should make clear to them that there is more to the inquiry than whether one would "rather take the Fifth" instead of testifying before the jury. It is simply not correct to say to such a putative witness, "You certainly have that right, under the Constitution, to do so." The privilege is not against testifying at all. It is against testifying to one or more facts beyond the threshold of a particular "trans-

action" that may tend to incriminate the witness. *Blackmon v. State*, supra, at 502.

Accordingly, a matter of privilege is presented by some character of examination to which a response is sought. During the inquiry should a putative witness respond without claiming it, the privilege is waived in that particular, and there is nothing for the trial court to rule on; but should the privilege be claimed the trial court must decide whether to sustain it, and then the witness is left free to answer or not. *Ray*, op cit, §§ 473 and 476, 1 Texas Practice 460, 464–465.

However, once a putative witness answers with an incriminating fact and an answer of a further fact is sought, should the privilege then be claimed, the issue becomes whether stating the first fact waived the privilege as to the second. *Blackmon* and *Draper*, both supra. That issue was reached in the *voir dire* examination conducted by the trial court in this case, but the trial judge did not properly resolve it. Instead, the judge announced that "it will be the ruling of the Court that the mere fact that she did answer the single question a few moments ago did not represent a knowing and voluntary waiver of her rights against self-incrimination..." Such is not the law under the very decision relied on by the majority; the prior statement being both "testimonial" and "incriminating," Joiner "plainly [had] reason to know... that [it] may be interpreted as a waiver of [her] fifth amendment privilege against self-incrimination [and] [s]uch a witness is not treated unfairly, then, if a court ultimately interprets the statements in this fashion." *Klein v. Harris*, supra, at 288.

In my judgment, the majority grievously errs in giving its approval to the notion

offensive questions from consideration by the jury, *Washburn v. State*, 299 S.W.2d 706, 709, 710 (Tex.Cr.App.1956), its own remedy was to reverse the judgment. But see *Mathis v. State*, 469 S.W.2d 796, 799 (Tex.Cr.App.1970). In Federal courts an appropriate instruction to the jury was seen as a prophylactic endeavor. *Unit-*

*ed States v. Maloney*, 262 F.2d 535, 538 (CA2 1959). Apparently conducting a *voir dire* examination never occurred to appellate judges or trial judges nor was one requested by an opposing party until more recent times. Thus the dearth of authority touching the instant situation.

that a witness may successfully plead ignorance of the law "that by answering she might be giving up her right not to incriminate herself," and then reclaim the privilege she had so affirmatively and voluntarily expressly waived in the face of contrary advice from her own counsel.

I dissent.