**Donny DAVIS, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–92–364–CR.**

Court of Appeals of Texas,
Fort Worth.

Aug. 3, 1994.

Robert McCrarey, Fort Worth, for appellant.

Tim Curry, Dist. Atty., Betty Marshall, Charles M. Mallin, Asst. Chief Appellate Section, Francine Y. Lyles, Asst. Crim. Dist. Atty., Fort Worth, for appellee.

Before WEAVER, HICKS and FARRAR, JJ.

## OPINION

WEAVER, Justice.

Appellant, Donny Davis, was charged by indictment with the offense of murder. At the close of the evidence, appellant requested and received a charge on the lesser offense of voluntary manslaughter. The jury convicted appellant of the lesser offense of voluntary manslaughter and assessed his punishment at sixteen years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

A short time after the receipt of the verdict and sentence, the State requested that the judgment be reformed to reflect an affirmative finding on the use of a deadly weapon. The trial court granted this request.

Appellant challenges his conviction through two points of error. In point one he alleges the trial court erred in adding the deadly weapon finding to the judgment, and in point two he claims the court erred in overruling his request to require a witness to testify despite the witness's assertion of the Fifth Amendment privilege against self-incrimination. We overrule appellant's points of error and affirm the judgment of the trial court.

Although appellant does not challenge the sufficiency of the evidence, a brief recitation of the facts is helpful in understanding the issues in this case. During the late evening hours of May 23, 1991, Leonard Lockhart and Alfonso Taylor went to Derrick Shaw's house in East Fort Worth, Texas. Appellant and his girlfriend, Simone Williams, lived in the house with Shaw in a room they rented from Shaw. While Lockhart and Taylor were at the house, Lockhart began calling Simone names and appellant became upset. Appellant and Lockhart exchanged words and a shoving match ensued in the front yard. Shaw and Taylor separated the two men and Shaw took appellant inside the house. While he was inside the house, appellant got a gun, a .32–caliber derringer, and put it in his pocket. He and Shaw then went back outside.

There is conflicting testimony as to exactly what happened next. Taylor testified that when appellant came back outside, he and Lockhart began arguing and pushing each other again. According to Taylor, appellant then pulled his gun out and shot Lockhart in the side of the head. Taylor testified that Lockhart did not have a gun or any other weapon during the altercation. However, appellant contradicted Taylor's testimony.

Appellant testified that when he went back outside, Lockhart had gotten a gun out of his car and began pointing it at appellant. According to appellant, it was at this time that he pulled his gun out of his pocket and shot Lockhart because he thought Lockhart was going to shoot him. After the shooting, appellant fled the scene and he was not arrested until four months later. The gun appellant used to shoot Lockhart was never recovered, nor was any other gun discovered at the scene.

In his first point of error appellant contends the trial court erred in adding a deadly weapon finding to the jury's verdict, which did not include a deadly weapon finding. Although there was no deadly weapon issue submitted to the jury, the State claims the trial court was correct in adding the deadly weapon finding because, according to the wording of the jury charge on voluntary manslaughter, the jury necessarily found that appellant used a deadly weapon during the commission of the offense. We agree.

In *Polk v. State*, 693 S.W.2d 391 (Tex. Crim.App.1985), the Court of Criminal Appeals set out three instances when, although the jury is the trier of fact, the trial court may properly enter in the judgment that the jury made an affirmative finding concerning a defendant's use or exhibition of a deadly weapon or firearm during the commission of an offense. These three instances are: (1) where the indictment specifically alleges the words "deadly weapon" in describing the weapon used and the verdict reads "guilty as charged in the indictment"; (2) where the indictment names a weapon which is *per se* a deadly weapon and the verdict reads "guilty as charged in the indictment"; and (3) where a special issue is submitted to the trier of fact and is answered affirmatively. *Id.* at 396. *See also DeAnda v. State*, 769 S.W.2d 522, 523 (Tex.Crim.App.1989); *Hutson v. State*, 843 S.W.2d 106, 107 (Tex.App.—Texarkana 1992, no pet.).

In the present case, the indictment charging appellant with murder reads in relevant part as follows:

[T]hat DONNY DAVIS ... did ... INTENTIONALLY AND KNOWINGLY CAUSE THE DEATH OF AN INDIVIDUAL, LEONARD LOCKHART, BY SHOOTING HIM WITH A DEADLY WEAPON, TO–WIT: A FIREARM,

PARAGRAPH TWO: AND ... FURTHER ... THAT THE SAID DONNY

DAVIS ... DID THEN AND THERE INTENTIONALLY WITH THE INTENT TO CAUSE SERIOUS BODILY INJURY TO LEONARD LOCKHART, COMMIT AN ACT CLEARLY DANGEROUS TO HUMAN LIFE, NAMELY, SHOOT LEONARD LOCKHART WITH A DEADLY WEAPON, TO–WIT: A FIREARM, WHICH CAUSED THE DEATH OF LEONARD LOCKHART.

However, appellant was not found guilty of the offense charged in the indictment.

In addition to the charge on murder, as alleged in the indictment, at appellant's request, the trial court included the following charge on voluntary manslaughter in the charge to the jury:

Now, if you find from the evidence beyond a reasonable doubt that the Defendant, Donny Davis, ... did then and there intentionally or knowingly cause the death of an individual, Leonard Lockhart, *by shooting him with a deadly weapon, to-wit: a firearm;* or if you find from the evidence beyond a reasonable doubt that the Defendant, Donny Davis, ... did then and there intentionally with the intent to cause serious bodily injury to Leonard Lockhart, commit an act clearly dangerous to human life, namely, *shoot Leonard Lockhart with a deadly weapon, to-wit: a firearm,* which caused the death of Leonard Lockhart, but you further find and believe from all the facts and circumstances in evidence in the case that the Defendant, in killing the deceased, if he did, acted under the *immediate influence of a sudden passion arising from an adequate cause,* or if you have a reasonable doubt as to whether the Defendant so acted under the immediate influence of a sudden passion arising from an adequate cause, then you will find the Defendant guilty of the offense of voluntary manslaughter. [Emphasis added.]

The jury found appellant "guilty of the offense of voluntary manslaughter."

Although the present case does not fit squarely into any of the three categories set out in *Polk,* we believe that under the same rationale utilized in that case, the trial court in this case was authorized to enter in the judgment that the jury made an affirmative finding on use of a deadly weapon. There is no question that if appellant had been convicted for murder, "as charged in the indictment," the trial court could have entered an affirmative finding on use of a deadly weapon under the Court of Criminal Appeals' holding in *Polk.* There is also no question that if the indictment had charged appellant only with voluntary manslaughter using the same language as that used in the jury charge on voluntary manslaughter, and if the jury had found appellant guilty of this offense "as charged in the indictment," then the trial court could have entered an affirmative finding on the use of a deadly weapon under *Polk.* However, the indictment in the present case only charged appellant with murder; it did not charge him with voluntary manslaughter. It was only after the close of the evidence, at appellant's request, that the jury was charged on voluntary manslaughter.

Despite this distinction, we believe that under the explicit wording used in the charge on voluntary manslaughter, the jury's verdict of guilty of voluntary manslaughter includes an *express* finding that appellant used a deadly weapon during the commission of the offense. In order to find appellant guilty of voluntary manslaughter under the charge set out above, the jury necessarily had to expressly find that appellant used "a deadly weapon, to-wit: a firearm," during the commission of the offense. Under the specific wording of the jury charge in the present case, the deadly weapon finding does not have to be "read into" the jury's verdict. Rather, the jury's verdict in the present case includes a specific finding of use of a deadly weapon just as a jury's verdict that reads "guilty as charged in the indictment" includes a finding of use of a deadly weapon when the indictment specifically pleads use of a "deadly weapon." Therefore, under the Court of Criminal Appeals' rationale in *Polk,* the trial court was authorized to enter in the judgment that the jury made an affirmative finding of use of a deadly weapon. *See Polk,* 693 S.W.2d at 396. Appellant's first point of error is overruled.

■ In his second point of error, appellant claims the trial court erred in overruling his

request to require Derrick Shaw to testify despite Shaw's assertion of the Fifth Amendment privilege against self-incrimination. Appellant wanted to present Shaw's testimony, rather than his own, to show Lockhart had a gun and to support his defensive theory of self-defense.

■ Although an accused's right of compulsory process under the Sixth Amendment is an important right that must be protected, it does not override a potential witness's Fifth Amendment privilege against self-incrimination. *Grayson v. State,* 684 S.W.2d 691, 696 n. 2 (Tex.Crim.App.1984). As a result, a trial court cannot compel a witness to answer questions "unless it is perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken in asserting the privilege, and that the answer cannot possibly tend to incriminate the witness." *Id.* at 696. In making this determination, the trial court cannot be skeptical, but must remain acutely aware that in the deviousness of crime and its detection, incrimination may be approached and achieved by obscure and unlikely lines of inquiry. *Id. See also Malloy v. Hogan,* 378 U.S. 1, 13, 84 S.Ct. 1489, 1496, 12 L.Ed.2d 653 (1964).

During trial, appellant's counsel proposed the following questions to Shaw outside the presence of the jury:

Q. Now, Mr. Shaw, for purposes of the record, I'm going to ask you a series of questions, and I don't want you to answer any of them yet, okay, until you've talked to your lawyer. All right? Then I'll ask you and your lawyer if there are any of the questions that you can or will answer. Okay? Let me just ask about 10 or 15 questions. Don't say anything while I'm asking them. All right? That will save us some time. All right?

A. Yes, sir.

Q. On or about May 23rd and in the early morning hours of May 24th, 1991, were you present at 1609 East Tucker in Fort Worth, Texas?

Next question: Was that property owned by and occupied by you at that time?

Next question: Living with you at that time was Donny Davis and Simone Williams, is that correct?

Next question: They lived with you for how long?

Next question: They were living there with your permission, were they not?

Next question: On that evening, somewhere between 11:00 and midnight, were you visited by Leonard Lockhart and Alfonso Taylor, either or both?

Next question: While Taylor and Lockhart were present, was Davis and Simone Williams present?

Next question: Did Lockhart start bad-mouthing Simone Williams in front of Donny Davis?

Did he call her a bitch and a whore?

Did Davis become upset?

Didn't they have some pushing and shoving?

Did the pushing and shoving go out into the front yard?

Did you assist and attempt to break it up by bringing Davis back into your house?

Did Davis again go outside?

Did you see Davis shoot Lockhart?

Did you see Lockhart before he was shot?

What was Lockhart doing at that time?

Is it true that you saw Lockhart go for a .38–caliber pistol?

Is it true that you saw that pistol in the backseat of Lockhart's car?

Is it true that Davis shot Lockhart before Lockhart could shoot Davis?

Is it true that, to date, you have not been charged with any criminal offense, misdemeanor or felony, resulting from the activities that you observed on or about May 23rd and May 24th, 1991, at your home?

Okay. Each of those questions would have been asked.

A. I invoke my fifth amendment right to remain silent.

Q. Is that true of all the questions I just asked you, Mr. Shaw?

A. Yes. Yes.

Although it is clear that the questions concerning Shaw's presence at the scene and the fact that appellant and Simone Williams lived in Shaw's house together with him would not tend to incriminate Shaw, these questions are not relevant to appellant's claim of self-defense. The questions which are relevant to appellant's self-defense theory are those dealing with whether Shaw saw Lockhart get a gun and point it at appellant. It is not clear that the answers to these questions could not possibly tend to incriminate Shaw.

At the time of appellant's trial, Derrick Shaw was under indictment for a murder that took place some four or five months after the incident involving appellant and Lockhart, and he was in the custody of the Tarrant County Sheriff. In that case, Shaw was believed to have fired a small caliber gun at the victim. No bullet or gun has been recovered in that case, and during appellant's trial, the State speculated that since the gun used by appellant was never recovered, Shaw may have used this same gun to shoot his victim. While it is unclear as to whether this alone would support Shaw's blanket assertion of the Fifth Amendment privilege against self-incrimination and his refusal to answer any questions, including those about whether Lockhart had a gun,[1] there is also another possible explanation which would support Shaw's refusal to testify about this issue.

Assuming for argument's sake that appellant was telling the truth when he testified that Lockhart had a gun, the question remains as to this gun's location. If Lockhart did have a gun, it was never discovered at the scene of Lockhart's death. Thus, assuming Lockhart had a gun, it is possible that Shaw took this gun before police arrived on the scene and used it to shoot his victim four or five months later. Under this scenario, it is not entirely clear that the questions dealing with whether Lockhart had a gun could not possibly tend to incriminate Shaw. As a result, the trial court did not err in refusing to require Shaw to testify. *See Grayson*, 684 S.W.2d at 696; *Ex Parte Butler*, 522 S.W.2d 196, 198 (Tex.1975). Appellant's second point of error is overruled.

The judgment of the trial court is affirmed.

---

1. In this respect, we note that "[a] witness may not withhold all of the evidence demanded of him merely because some of it may be protected from disclosure by the Fifth Amendment." *Reese v. State*, No. 107–93, 877 S.W.2d 328, 337 (Tex. Crim.App.1994). *See also United States v. Melchor Moreno*, 536 F.2d 1042, 1049 (5th Cir.1976).